IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., </br></br>Plaintiffs,</br></br>v.</br></br>ANGIODYNAMICS, INC.,</br></br>Defendant. | )</br>)</br>)</br>)</br>)</br>) Civ. No. 15-218-SLR/SRF</br>)</br>)</br>)</br>) |

**MEMORANDUM ORDER**

At Wilmington this ⟨?⟩ day of May, 2017, having heard argument on, and having reviewed the papers submitted in connection with, the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language of U.S. Patent Nos. 8,475,417 ("the '417 patent"), 8,805,478 ("the '478 patent"), and 8,545,460 ("the '460 patent") shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows:

1. **"An assembly for identifying a power injectable vascular access port, comprising,"** **"A method of performing a power injection procedure, comprising,"** and **"A system for identifying a power injectable vascular access port,**

**comprising:**[1] The court concludes that the preambles are limiting. In this regard, the court recognizes that the Federal Circuit, depending on the panel and the facts before it, has expressed guidance on this issue in various ways. However, given that the undisputed focus of each of the asserted patents is on how to identify or use a power injectable vascular access port, the Federal Circuit's decisions in *On Demand Machine Corp. v. Ingram Industries, Inc.,* 442 F.3d 1331 (Fed. Cir. 2006), and *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989), resonate most directly to the facts at bar. More specifically, the inventors of the asserted patents recognized that: (1) power injection procedures require a vascular port structured to accommodate the fluid flow rate and pressure rates of such a procedure; and (2) it was important to identify the access port as being structured for power injection. (*See, e.g.,* '417 patent, 2:63-3:1; 4:4-9; 25:25-38) As the court understands the claims at issue, then, the focus is on how to make a power injectable vascular access port identifiable, not necessarily on how to make a power injectable vascular access port. Therefore, the preambles of the asserted patents "serve[] to focus the reader on the invention that is being claimed" and "state[] the framework of the invention." *On Demand,* 442 F.3d at 1343. The inventors at bar were working on a particular problem, and it would be inappropriate to read the claims more broadly than the inventive context. Consistent with *Corning*, the preambles at bar "do give 'life and meaning' and provide further positive limitations as to the invention claimed." 868 F.2d at 1257 (citation omitted).

---

[1]Preambles found in claims 1 and 8 of the '417 patent, claims 1 and 8 of the '478 patent, and claim 1 of the '460 patent, respectively.

2. "**Vascular access port**" and "**access port**:"[2] "A port structured for power injection." Consistent with the court's conclusion above, the inventions disclosed in the asserted patents are directed to identifying and using power injectable vascular access ports, that is, ports which must be "suitable for flowing fluid at a fluid flow rate of at least 1 milliliter per second through the access port" and "suitable [as well] for accommodating a pressure within the cavity of at least 35 psi." (*See, e.g.,* '417 patent, claim 1)

3. "**Identifiable feature**" limitations:[3] Defendant contends that these various limitations are indefinite. The Supreme Court in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014), has read § 112's definiteness requirement to mean that "a patent's claims, viewed in light of the specification and prosecution history, [are meant to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Id.* at 2129. While recognizing the "inherent limitations of language," the Court explained that "a patent must be precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them,' . . . in a manner that avoids '[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims. . . .'" *Id..* at 2123. The Federal Circuit in *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224 (Fed. Cir. 2016), more recently explained that "the dispositive question in an indefiniteness inquiry is whether the 'claims,' not particular claim terms, 'read in light of the specification delineating the

---

[2]Claims 1 and 8 of the '417 patent; claims 1 and 8 of the '478 patent; and claim 1 of the '460 patent.

[3]Claims 1, 2, 6, 8, 9 and 13 of the '417 patent; claims 1 and 2 of the '460 patent.

3

patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Id.* at 1231 (citing *Nautilus*, 134 S. Ct. at 2129). Therefore, in an attempt to follow the guidance of the Courts in *Nautilus* and *Cox*, the court declines to construe this phrase separately from the more complete limitations discussed below.

4. Defendant argues in this regard that various of "the claims neither define nor circumscribe the scope of" the "identifiable feature" limitations; indeed, the limitations "must be broad enough to encompass a myriad of possibilities, such as: (1) 'particular geometric shapes'; (2) 'radiographic markers perceivable via x-ray'; (3) 'structural features . . . perceivable via palpation'; (4) visually perceptible information'; (5) 'RFID tags'; and (6) ultrasound-detectable features.'" (D.I. 120 at 7-8) And, indeed, the specifications of the patents in suit disclose that "at least one identification attribute may be observed (e.g., visually, by palpation, ultrasonically, radiographically, etc.) or otherwise detected." (*See, e.g.,* '417 patent, 25:35-38) The specifications conclude with notice that "various other embodiments structures may be employed for forming at least one identifiable feature of an access port of the instant disclosure." (*See, e.g.,* '417 patent, 30:43-45) There is no doubt, then, that the claims at issue are very broadly written. But "[m]erely claiming broadly does not render a claim insolubly ambiguous, nor does it prevent the public from understanding the scope of the patent." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009) (citing *Application of Gardner*, 427 F.2d 786, 788 (C.C. P.A. 1970)).

6. Claims 1-6 and 8-13 of the '417 patent: Not indefinite, as each limitation is

4

narrowed in scope through the context of the whole; e.g., one of skill in the art can discern what the first identifiable feature can be by eliminating as choices radiographic markers and features separated from the port. (*See* '417 patent, 25:35-38) This analysis is carried to its logical end when the dependent claims are reviewed, as they further limit the choices as to what the first and second features can be.

    a. **"[A] first [and a] second identifiable feature incorporated into the access port:"** "Two perceivable attributes that identify an access port as being structured for power injection, one of the two attributes being a radiographic attribute that is perceivable via x-ray." ('417 patent, 25:35-38, 26:46-60; claims 1, 4, 5, 8, 11, and 12)

    b. **"[A] third identifiable feature separated from the subcutaneously implanted access port::"** "A third perceivable attribute that identifies an access port as being structured for power injection, and that is separate from the port that is implanted under a patient's skin." The specification describes how an access port may be identified as structured for power injection by actually identifying the patient, e.g., with a "key chain, a bracelet, a wrist band, a sticker provided on a patient's chart, a patient ID card, a label provided on packaging of the access port," or other "information carrying device." ('417 patent, 27:6-28; claims 1, 6, 8, and 13)

    c. **"[T]he other of the first and second features is a structural feature . . perceivable via palpation:"** "A structural attribute of the access port that identifies the port as being structured for power injection, which attribute can be observed when touched." ('417 patent, 25:35-38; claims 2 and 9)

5

d. "**[T]he structural feature comprises a body having a particular geometric shape:**" "The access port housing has a geometric shape that identifies the access port as being structured for power injection." ('417 patent, 26:10-17, claims 3 and 10)

7. Claims 1, 2, and 4 of the '460 patent: Not indefinite, for the reasons discussed above.

a. "**[A] first identifiable feature incorporated into the access port . . . comprising a radiographic marker:**" "A first attribute that identifies an access port as being structured for power injection and is perceivable via x-ray." ('460 patent, 25:35-38, 26:46-60; claims 1 and 4)

b. "**[A] second identifiable feature separated from the subcutaneously implanted access port:**" "A second perceivable attribute that identifies an access port as being structured for power injection, and that is separate from the port that is implanted under a patient's skin." ('460 patent, 27:6-28, claims 1 and 2)

8. Claims 1, 8, and 11 of the '478 patent. Not indefinite, for the reasons discussed above.

a. "**Identifying the indicating radiographic feature on the x-ray:**" "Recognizing that the radiographic attribute on the x-ray identifies an access port as being structured for power injection." ('478 patent, 25:41-44, 26:52-58; claims 1 and 8)

b. "**Confirming that the access port is suitable for flowing fluid at a rate of at least 1 milliliter per second by visually perceiving information outside of**

**the body**:" "A perceivable attribute that identifies an access port as being structured for power injection, and that is separate from the patient's body." ('478 patent, 27:13-35, claims 5 and 11)

9. The court has provided constructions in quotes for the claim limitations at issue. The parties are expected to present the claim constructions consistently with any explanation or clarification herein provided by the court, even if such language is not included within the quotes.

_____
Senior United States District Judge