IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| C R BARD INC., and BARD PERIPHERAL VASCULAR, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANGIODYNAMICS INC., <br><br> Defendant. | 1:15CV218 <br><br> **MEMORANDUM AND ORDER** |

This matter is before the court on various motions in limine filed by C R Bard, Inc., and Bard Peripheral Vascular Inc. (hereinafter collectively referred to as Bard) Filing No. 344-14, Ex. 12, and by AngioDynamics, Filing No. 344-15, Ex. 13. The parties submitted motions/briefs numbering 105 pages.

Although the motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings, performing a gatekeeping function and sharpening the focus for later trial proceedings, some evidentiary submissions cannot be evaluated accurately or sufficiently by the trial judge in such a procedural environment. *Jonasson v. Lutheran Child and Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997). A motion in limine is appropriate for "evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Id.* In other instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate the impact of the evidence on the jury. *Id.* The Eighth Circuit has noted that "[e]videntiary rulings made by a trial court during motions in limine are preliminary and may change depending on what actually

happens at trial." *Walzer v. St. Joseph State Hosp.,* 231 F.3d 1108, 1113 (8th Cir. 2000). "Evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." See *Leonard v. Stemtech Health Scis., Inc.,* 981 F. Supp. 2d 273, 276 (D. Del. 2013). To the extent that a party challenges the probative value of the evidence, an attack upon the probative sufficiency of evidence relates not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve. *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010).

<u>*Motion in Limine, Filing No. 344-14, Ex. 12*</u>

Bard first contends that AngioDynamics is attempting to redefine certain claim constructions already decided by the court. The court has previously determined and stated that all claims/evidence must comport with the claim constructions in this case. Memorandum and Order, Filing No. 356. Any other contradictory evidence will not be permitted. If either party attempts to introduce evidence outside of the claim construction, the opposing party may object and bring it to the court's attention at trial.

Bard also contends that Mr. Chad Campbell was originally designated as a 30(b)(6) witness (designated witness for an organization). Prior to taking his deposition, AngioDynamics withdrew Mr. Campbell as an expert. He only joined AngioDynamics in the summer of 2016, a year after the filing of this lawsuit. AngioDynamics has now indicated that he is very likely to be called to testify. It is difficult at this juncture to determine what Mr. Campbell intends to testify about and whether Bard was aware of this testimony. The court will determine this issue as the evidence is presented at trial.

Bard next argues that the testimony of Anthony David Smith should be confined to facts, because he has not been timely designated as an expert witness. AngioDynamics argues that Bard had plenty of time to question Mr. Smith during his seven-hour deposition. AngioDynamics contends that any questions regarding his knowledge can be covered in cross-examination. To the extent that Bard had the opportunity to question Smith pursuant to Mr. Smith's designation, the court is inclined to permit that evidence. However, to the extent that AngioDynamics wants to question Smith outside of the designation, the court is not likely to allow expert testimony not disclosed to Bard. The court will further address these issues as they arise at trial.

Bard next argues that AngioDynamics should be precluded from introducing argument and evidence that is misleading and prejudicial and without a factual basis. Bard contends that AngioDynamics is speculating about motives for filing the lawsuit and use of certain words like "monopolies" and "stifle competition". The court will not permit the use of inappropriate words such as monopolize. *See Genzyme Corp. v. Atrium Med. Corp.*, 315 F. Supp. 2d 552, 586 (D. Del. 2004) (citing *Jamesbury Corp. v. Litton Indus. Prods.,* Inc., 756 F.2d 1556, 1559 (Fed. Cir. 1985)) (noting "use of the word monopoly was inappropriate, since the use of this word may be pejorative.") The terminology used at trial should be relevant to the case and issues before the court.

Likewise, Bard argues that AngioDynamics should be precluded from discussing other cases wherein Bard has sued AngioDynamics. *See e.g., Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2007 WL 7658923, at *1 (D. Del. Sept. 14, 2007) ("The Court concludes that the potential prejudice to *Power* Integrations of having the jury hear that the patents have been called for review by the PTO outweighs the probative

value of the evidence."). The court leans towards disallowing this testimony, but it will take the issue under advisement until such time as it is going to be mentioned at trial. If it is relevant evidence related to a claim or defense, the court will further consider it.

Bard next moves to exclude surveys that it conducted in 2004 and 2005 related to power injection for proof of the matter asserted, because the results are hearsay. Likewise, to the extent Dr. Vogelzang's expert testimony relies on these results, his testimony should also be excluded contends Bard. The surveys include out of court statements by technicians, nurses, physicians, and include summaries of responses. Consequently, they violate Fed. R. Evid. 801, argues Bard. *See also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 516 n.14 (3d Cir. 1998). Second, contends Bard, there are no applicable hearsay exceptions. *See, e.g.*, *Pittsburgh Press Club v. U.S.*, 579 F.2d 751, 760 (3d Cir. 1978) (reversing the district court's decision to admit into evidence a survey that was a summary and distillation of 281 declarations offered to prove the truth of the matters asserted). AngioDynamics contends the surveys are admissible as a non-hearsay party admission under Fed. R. Evid. 801(2)(A). *See United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 387, 454 (D. Del. 2003) (admitting surveys commissioned by a party and its analysis of the surveys as non-hearsay party admissions). Bard contends this is an erroneous interpretation by AngioDynamics because the responses were not "made by the party in an individual or representative capacity" as required by 801(2)(A). Second, Bard contends it never adopted such surveys, and third, they are not business records, as they do not meet the requirements of 803(6). The court leans towards excluding some, if not all, of these surveys for the

4

reasons stated by Bard. However, the court will not rule on these issues until it sees how the evidence is presented at trial.

Next, Bard wants this court to exclude any testimony and evidence regarding inequitable conduct offered by AngioDynamics. AngioDynamics asks this court to allow the jury to issue an advisory opinion on the equitable conduct claims. The court agrees with Bard. It is not for the jury to decide issues related to inequitable conduct. *See* [*Interdigital Commc'ns Inc. v. Nokia Corp.*, 2014 WL 12465431, at \*1 (D. Del. Aug. 28, 2014)](#) ("Inequitable conduct is not a matter for the jury to decide, and the jury should not hear any of that evidence unless it is independently admissible for some other purpose.") The court will hear this evidence and decide the equitable conduct claims.

*Motion in Limine, Filing No. 344-15, Ex. 13*

AngioDynamics first moves this court to preclude Bard from suggesting that it invented power injectable ports or power injection procedures. This is an issue that can be handled on cross examination. If Bard chooses to assert this claim, AngioDynamics can attempt to rebut it at trial.

Next, AngioDynamics moves to preclude Bard from suggesting that, to invalidate, prior art ports must have been marketed, sold, or otherwise indicated for use in power injection. In response, Bard states:

> AngioDynamics's motion in limine is wholly unnecessary. Bard has never maintained that FDA approval of a port to be marketed or sold as a power injectable port is a claim element, which AngioDynamics itself acknowledges in its motion by quoting Bard's experts. Nonetheless, AngioDynamics's motion further suggests that Bard's experts cannot offer evidence of a port's approval for power injection by the FDA. This is illogical and wrong. A port having FDA approval to be sold or marketed as a power injectable port is highly probative evidence in this case. In fact, it is likely the most probative evidence with respect to several claim elements.

5

Filing No. 344-15, at 17. Bard agrees that the marketing and sold language is a nonissue. Regarding the power injection issue, if Bard raises the issue, AngioDynamics can clearly cross examine the witnesses. Again, the court will see how this evidence is presented at trial and will make appropriate rulings, at that time, if necessary.

AngioDynamics next moves to preclude evidence and argument relating to secondary indicia of non-obviousness. AngioDynamics states: "Bard's attempted proffer of secondary considerations evidence violates the cardinal rule of law that the proponent (here, Bard) must prove a nexus between each alleged secondary consideration and a specific claim element." Filing No. 344-15, at 23. Further, AngioDynamics argues that the secondary considerations analysis does nothing more than conflate the Asserted Claims with the power injection. Bard argues this is not appropriate for a motion in limine, as it actually is a request for judgment as a matter of law prior to the trial. The court agrees with Bard. Again, the court will allow this evidence to go to trial. If Bard is unable to make the appropriate evidentiary showing at trial, AngioDynamics can cross examine the witness or further motion the court.

AngioDynamics next asks this court to prevent Bard from using undisclosed evidence, namely evidence that was not produced or identified during discovery. First, AngioDynamics contends that Bard may not tell the jury about undisclosed/non-produced Non-Disclosure Agreements (NDA's) regarding market surveys. Second, AngioDynamics states that Bard failed to identify customer hospitals, individuals who performed the method steps or evidence of direction or control over either and cannot use this information now to show actual use. Bard argues, to the contrary, that there is

6

no undisclosed evidence that it intends to present at trial. Again, Bard contends that AngioDynamics is asking this court to issue pretrial rulings as to the merits of its case, without first listening to the evidence. Apparently, there are missing NDA's but Bard produced all those that are in existence. Again, the court will listen to the evidence as presented and make a ruling, at that time, if necessary.

Last, AngioDynamics moves to preclude Bard from attempting to establish an invention date before April 25, 2006, arguing Bard cannot prove an invention date prior to that time. Bard counters, contending again that this is an argument for summary judgment, not one for a motion in limine. The court agrees. This is an issue that cannot be decided on a motion in limine. The court will hear testimony and evidence at trial, and the parties can make the appropriate arguments at that time.

THEREFORE, IT IS ORDERED THAT Bard's motions in limine, Filing No. 344-14, Ex. 12, are granted in part and denied in part as set forth herein; AngioDynamics motions in limine, Filing No. 344-15, Ex. 13, are granted in part and denied in part as set forth herein.

Dated this 18th day of July, 2018.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge