*As read in open Court on 3/4/19*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

C R BARD INC. ET AL,

           Plaintiffs,

v.

ANGIODYNAMICS INC.,

           Defendant.

**1:15CV218**

**COURT'S PROPOSED INITIAL JURY**

**INSTRUCTIONS**

## INSTRUCTION NO. 1

## INTRODUCTION

Members of the jury: Now that you have been sworn in, I have the following preliminary instructions for guidance on your role as jurors in this case.

These instructions are intended to introduce you to the case and the law that you will apply to the evidence that you will hear.  I will give you more instructions at the end of the trial.  Also, because this is a patent trial which will deal with subject matter that is not within the everyday experience of most of us, I will additionally give you some preliminary instructions regarding patents to assist you in discharging your duties as jurors.

## INSTRUCTION NO. 2

## DUTY

It will be your duty to decide a verdict from the evidence.  From the evidence, you will decide what the facts are. You and only you will be the judge of the facts.  You will have to decide what happened.   I play no part in judging the facts.

You are entitled to consider the evidence in the light of your own observations and experiences in life.  You may use reason and common sense to draw deductions from facts established by the evidence.  You will then apply those facts to the law which I give you in these and the other instructions.  In that way, you will reach your verdict.  You are the sole judges of the facts; but you must follow the law as stated in my instructions, whether you agree or disagree with the law stated in the instructions.

Do not allow sympathy or prejudice to influence you.  The law requires that your verdict be unaffected by anything except the evidence, your common sense, and the law stated in these and other instructions.

Anything that I may say or do during the trial must not be taken by you as an indication of what I think of the evidence or what I think your verdict should be.

## INSTRUCTION NO. 3

### EVIDENCE

The evidence from which you will find the facts will consist of the testimony of witnesses, and the documents and other things admitted into evidence.  The evidence may also include certain facts agreed to by the parties or that I may instruct you to find.

Certain things are not evidence and must not be considered by you.  I will list them for you now:

1.     Statements, arguments, questions and comments by lawyers are not evidence.

2.     Exhibits that are identified by a party but not offered or received in evidence are not evidence.

3.     Objections by lawyers are not evidence.

4.     Testimony and exhibits that I strike from the record or tell you to disregard are not evidence and must not be considered.

5.     Anything you see or hear about this case outside this courtroom is not evidence, unless I specifically tell you otherwise during the trial.

There are rules that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that is not permitted by the rules of evidence, the lawyer may object.  This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence.  You should not be influenced by a lawyer's objection or by my ruling on the objection. Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the

3

rules of evidence.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.

Furthermore, sometimes a particular item of evidence is received for a limited purpose only.  That is, it can be used by you only for one particular purpose, and not for any other purpose.  I will tell you when that occurs and instruct you on the purposes for which the item can and cannot be used.  You should also pay particularly close attention to such an instruction, because it may not be available to you in writing later in the jury room.

Also, certain testimony or other evidence may be ordered struck from the record, and you will be instructed to disregard this evidence.  Do not consider any testimony or other evidence that gets struck or excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

During trial you will see many exhibits.  Many of these will be admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  The other exhibits (including charts and animations) will be offered to help illustrate the testimony of the witnesses.  These illustrative exhibits, called "demonstrative exhibits," are not admitted into evidence and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you will hear when you see the demonstrative exhibits that is the evidence of this case.

## INSTRUCTION NO. 4

## BENCH CONFERENCES AND RECESSES

During the trial it may become necessary for me to talk with the lawyers outside your hearing, either by having a bench conference while you are present in the courtroom, sometimes called a sidebar or by calling a recess. Please understand that while you are waiting, the court and counsel are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence which govern the trial, and to avoid confusion and error. We will, of course, do what we can keep the number and length of these conferences to a minimum.

I may not always grant an attorney's request for a sidebar. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## INSTRUCTION NO. 5

## JURY QUESTIONS

While evidence is being presented, you are not allowed to raise your hands to ask questions about that evidence.  However, if you do have questions about something you hear during the examination of a witness, you may write your questions down on a piece of paper.  When the attorneys have finished examining that witness, you may submit your written question or questions.  I will review each question with the attorneys.  You may not receive an answer to your question because I may decide that the question is not proper under the rules of evidence.  I may ask your question to the witness, or the attorneys may choose to answer your questions by asking more questions of the witness.  But even if the question is proper, you may not get an immediate answer to your question.  For instance, a witness or an exhibit that you will see later in the trial may answer your question.

## INSTRUCTION NO. 6

## NOTE TAKING

If you wish, you may, but are not required to, take notes to help you remember what witnesses said.  Notes may be helpful to you because at the end of the trial, you must make your decision based on what you recall of the evidence.  You will not have a written transcript to consult, and it may not be practical for the court reporter to read back lengthy testimony.  Therefore, you should pay close attention to the testimony as it is given.

If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide this case.  Do not let note-taking distract you to the point that you miss hearing other testimony from the witness.

During the trial, documents or other physical items may be received into evidence. At the present, however, you will not be supplied with a list of exhibits which are received in evidence.  Therefore, you may wish to make notes about the exhibits, especially their description and number, so that you can refer to those exhibits while you are deliberating.

When we take our recess each day for the lunchtime break and when we take our recess each night, please take your notes to the jury room and leave your notes there. The courtroom deputy will take custody of your notes and secure them.  No one will read your notes but you.  Your notes will be destroyed after the trial is over.

## INSTRUCTION NO. 7

## BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." Your verdict depends on whether you find certain facts have been proved either by a preponderance of evidence or by clear and convincing evidence.

A party asserting patent infringement has the burden of proving infringement and willful infringement by a preponderance of the evidence. That means the party asserting infringement and willful infringement has to produce evidence that, when considered in light of all of the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the claims of the party asserting infringement must make the scales tip somewhat on its side.

A party challenging the validity of a patent has the burden of proving by clear and convincing evidence that the patent is invalid. Clear and convincing evidence means that it is highly probable the fact is true. Proof by clear and convincing evidence is, thus, a higher burden of proof than a preponderance of the evidence. When a party has the burden of proof by clear and convincing evidence, it means that you must be persuaded that it is highly probable that what the party seeks to prove is true.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

8

**INSTRUCTION NO. 8**

**WITNESSES**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.  You are the sole judges of each witness's credibility.

You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, to make one harmonious story of it all.  But if you cannot do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.  This instruction applies to the testimony of all witnesses, including expert witnesses.

### INSTRUCTION NO. 9

### CONDUCT OF THE JURY

Now a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you, nor you with them. That is why you are asked to wear your juror tags while in the courthouse.  It shows that you are someone who is not to be approached in any way.  In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided.  If anyone should try to talk to you about the case, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.  By that I mean, if there may be a newspaper or internet article or radio or television report relating to this case, do not read the article or watch or listen to the report.

Third, do not try to do any research or make any investigation about the case on your own.  Let me elaborate.  During the course of the trial, you must not conduct any independent research about the case, the matters in the case, and the individuals or entities involved in the case.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or any other electronic means. Also, again, should there happen to be a newspaper article or radio, or television report relating to this case, do not read the article or watch or listen to the report.  It is important that you decide this case based solely on the evidence presented in the courtroom. Please do not try to find out information from any other sources.

Finally, do not form any opinion until all the evidence has been presented.  Keep an open mind until you start your deliberations at the end of the case.

## INSTRUCTION NO. 10

## OUTSIDE COMMUNICATIONS AND RESEARCH

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom because the parties must have an opportunity to respond to any information you consider in deciding this case.  This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or entities involved in the case.  In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs, chat rooms, social networking websites including Facebook, Instagram, LinkedIn or YouTube, or use your cell phones, iPhones, text messaging, Twitter or any other electronic tools or devices to obtain information about this case or to help you decide the case.

Many of you use cell phones, smartphones, the internet, and other tools of technology.  You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends.  You may not communicate with anyone about the case on your cell phone, through e-mail, your smartphone, text messaging, on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking websites, including Facebook, Linked In, and YouTube.

Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors.  After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.  I hope that for all of you this case is interesting and noteworthy.  However, until you have returned a verdict and the case is at an end, you must not talk to anyone or communicate with anyone about the case by any means,

electronic or otherwise.  This includes communications with your family and friends.  Such communication would compromise your fairness as jurors and may require your removal from the case and a retrial of this matter at considerable expense to the parties.

## INSTRUCTION NO. 11

## OUTLINE OF THE TRIAL

The trial will proceed in the following manner:

First, the attorney for the plaintiff may make an opening statement. Next, the attorney for the defendant may make an opening statement. An opening statement is not evidence but is an outline of what the party intends to prove, a summary of what the attorney expects the evidence to be.

The plaintiff's attorney will then present evidence through a direct examination of a witness. The defendant's attorney may then cross-examine that witness. After the cross-examination, the plaintiff's attorney may ask additional questions on re-direct. The defendant's attorney may also ask questions on re-cross. After all of the plaintiff's witnesses have been presented, the plaintiff will rest. The defendant's attorney will then present the defendant's case. The defendant may present evidence through direct examination of witnesses and plaintiff's attorney may cross-examine those witnesses. Re-direct and re-cross examinations may also take place.

After the opening statements, Bard will present its evidence in support of its contention that some of the claims of the '417, the '460, and the '478 patents have been and continue to be infringed by AngioDynamics and that the infringement has been and continues to be willful.

AngioDynamics will then present its evidence that the claims of the '417, the '460, and the '478 patents are invalid. In addition to presenting its evidence of invalidity, AngioDynamics will put on evidence responding to Bard's proof of infringement and willfulness. Both Bard and AngioDynamics may have the option to present rebuttal evidence.

After the presentation of evidence is completed, the attorneys will make their closing arguments to summarize and interpret the evidence for you.  Just as with opening statements, these closing arguments are not evidence.  I will then instruct you further on the law.  After that, you will retire to deliberate on your verdict.

## INSTRUCTION NO. 12

## STATEMENT OF THE CASE

This is a patent case.  The parties are Bard Peripheral Vascular, Inc., the plaintiff, and C.R. Bard, Inc., plaintiff, and a counterclaim/third party defendant (collectively, "Bard") and AngioDynamics, Inc. (hereinafter "AngioDynamics"), the defendant.

The Plaintiff is a medical device company named Bard Peripheral Vascular, Inc.  The Defendant is a medical device company named AngioDynamics, Inc.  The Plaintiff may be referred to as "Bard" during the trial.  The Defendant may be referred to as "AngioDynamics." Bard is the owner of the three patents at issue here, which are identified as U.S. Patent No. 8,475,417, U.S. Patent No. 8,545,460, and U.S. Patent No. 8,805,478.  For your convenience, the parties and I will often refer to these patents by the last three digits of the patent numbers, namely as the '417 patent, the '460 patent, and the '478 patent.

The '417 patent and the '460 patent are apparatus patents.  An apparatus patent covers a device or product.  The '417 patent is titled "Assemblies for identifying a power injectable access port." A power injectable vascular access port is an implanted medical device that allows for the infusion of drugs used in chemotherapy as well as power injection of contrast media, which enhances CT scan images of a patient's body for use in CT scans. The '460 patent is titled "Infusion apparatuses and related methods."

The '478 patent is a method patent.  A method patent covers steps in a process or procedure.  The '478 patent is directed to a method of performing a power injection procedure using a power injectable access port, including the step of identifying the implanted port as suitable for power injection.

Bard contends AngioDynamics makes, uses, or sells products—the Smart Port

16

CT, Smart Port LP, Smart Port Mini, BioFlo, Xcela, and Xcela Plus ("the accused products")—that infringe the '417, '460, and '478 Patents (collectively the "asserted patents").   AngioDynamics contends that it is not liable for infringement because the patents are invalid, ineligible for patent protection under the patent statute and/or the accused products do not infringe the asserted patent claims.

**INSTRUCTION NO. 13**

**SUMMARY OF CONTENTIONS – PATENT ISSUES**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

Bard contends that AngioDynamics is directly infringing the '417 patent and the '460 patent by selling power injectable ports with features for identifying the ports as suitable for power injection after the port has been placed under a patient's skin.  Bard also contends that AngioDynamics is inducing infringement of the '478 patent by selling its infringing products to hospitals and encouraging the hospitals to perform the steps that directly infringe the '478 patent.  The products that Bard accuses of infringement include AngioDynamics's Smart Port products, Xcela Port products, Xcela Plus, and BioFlo Port products.

AngioDynamics denies that it has infringed the '417, the '460, and the '478 patents and denies that hospitals perform the steps recited in the '478 patent. AngioDynamics also argues that Bard's patents are invalid because power injectable ports and features for identifying them as such were not new at the time of Bard's inventions.  AngioDynamics further contends that Bard's inventions are invalid because they would have been obvious to a person of ordinary skill in the art at the time of the inventions.

Your job will be to decide whether certain claims of the Asserted Patents have been infringed and whether those claims are invalid.  If you decide that any claim of Bard's patents has been infringed and is not invalid, you will then need to decide any money

damages to be awarded to Bard to compensate it for the infringement.   You will also need to make a finding as to whether the infringement was willful.

### INSTRUCTION NO. 14

### THE UNITED STATES PATENT

### CONSTITUTIONAL AND STATUTORY BASIS FOR PATENT GRANT

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Under the Patent Statute, to be patentable, an invention must be new, useful, and non-obvious, and the claimed subject matter cannot be an abstract idea. I will explain these requirements later.

A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed. When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims.

## INSTRUCTION NO. 15

## THE ROLE OF CLAIMS OF A PATENT

Before you decide whether AngioDynamics has infringed the claims of Bard's patents or whether Bard's patents are invalid, you will have to understand the role of patent claims. The patent claims are the numbered sentences at the end of the patent. The claims are what define the patent owners' rights under the law; that is, the claims define what the patent owners may exclude others from doing during the term of that patent.

The claims of a patent serve two purposes. First, they set the boundaries of the patented invention—what the patent covers. Second, they provide notice to the public of what those boundaries are. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.

Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

## INSTRUCTION NO. 16

## CLAIM CONSTRUCTION

While the claims define the invention, sometimes the words or phrases of the claims need to be further defined or interpreted. It is the court's duty under the law to define what the patent claims mean and to instruct you about that meaning. You must accept the meanings, sometimes called constructions, that I give you and use the meaning of each claim when you decide whether any claim of the patent has been infringed or whether any claim is invalid. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning.

I will now tell you the meanings of the following words and groups of words from the patent claims:

**In all the asserted patents:**

**"Vascular access port" or "access port":** a port structured for power injection. Power injectable vascular ports must be 'suitable for flowing fluid at a fluid flow rate of at least 1 milliliter per second through the access port' and 'suitable [as well] for accommodating a pressure within the cavity of at least 35 psi.

**In the '417 patent:**

**"[A] first [and a] second identifiable feature incorporated into the access port":** Two perceivable attributes that identify an access port as being structured for power injection, one of the two attributes being a radiographic attribute that is perceivable via x-ray.

**"[A] third identifiable feature separated from the subcutaneously implanted access port":** A third perceivable attribute that identifies an access port as being structured for power injection, and that is separate from the port that is implanted under a patient's skin.

**In the '460 patent:**

**"[A] first identifiable feature incorporated into the access port . . . comprising a radiographic marker:"** A first attribute that identifies an access port as being structured for power injection and is perceivable via x-ray.

22

**"[A] second identifiable feature separated from the subcutaneously implanted access port:"**   A second perceivable attribute that identifies an access port as being structured for power injection, and that is separate from the port that is implanted under a patient's skin.

### In the '478 patent:

**"Identifying the indicating radiographic feature on the x-ray:"** Recognizing that the radiographic attribute on the x-ray identifies an access port as being structured for power injection.

**"Confirming that the access port is suitable for flowing fluid at a rate of at least 1 milliliter per second by visually perceiving information outside of the body:"**   A perceivable attribute that identifies an access port as being structured for power injection, and that is separate from the patient's body.

## INSTRUCTION NO. 17

## UNCONTROVERTED FACTS

The parties have stipulated that certain facts are true, and some of those stipulations may be read to you during this trial.   You must treat these facts as having been proved for the purposes of this case.

## INSTRUCTION NO. 18

## INFRINGEMENT GENERALLY

If any person or business entity makes, uses, sells (within the United States), offers to sell (from within the United States), or imports (into the United States) what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim, but no infringement as to another. Bard alleges AngioDynamics infringes claims 5, 6, 12, and 13 of the '417 patent; claims 2 and 4 of the '460 patent; and claims 3, 5, 9, and 11 of the '478 patent (collectively, "the asserted claims"). AngioDynamics denies infringement and asserts that the asserted claims are invalid.

## INSTRUCTION NO. 19

## PATENT INFRINGEMENT OVERVIEW

You will be asked to decide whether AngioDynamics has infringed any of the asserted claims of the asserted patents.  In this case, Bard alleges that AngioDynamics directly infringes the '417 patent and the '460 patent by making, using, selling, or offering for sale in the United States a product meeting all the requirements of a claim of those patents.  Bard also alleges that AngioDynamics indirectly infringes the '478 patent by inducing another person to infringe.

In order to prove infringement, Bard must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

If you decide that any claim of the '417, the '460, and the '478 patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Bard to compensate it for the infringement.

## INSTRUCTION NO. 20

## DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" ELEMENTS

In order to recover on its claim of direct infringement of the '417 and '460 patents, Bard must prove by a preponderance of the evidence,

1.      that AngioDynamics made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim;

2.      and did so without the permission of Bard during the time the '417 and '460 patents were in force.

You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement.

If you find Bard has proved these elements by a preponderance of the evidence, your verdict will be in favor of Bard on its direct infringement claim.

If you find Bard has not proved these elements by a preponderance of the evidence, your verdict will be against Bard on its direct infringement claim.

27

## INSTRUCTION NO. 21

## INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT ELEMENTS

Bard alleges that AngioDynamics is liable for infringement by actively inducing other persons or entities—its customers—to directly infringe the '478 patent.   As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

AngioDynamics is liable for active inducement of a claim only if Bard proves by a preponderance of the evidence:

(1)  that a single entity actually performed every step, or directed and controlled every step, of the method claims in the United States;

(2) that AngioDynamics took action during the time the '478 patent was in force intending to cause the infringing acts by such entity; and

(3) that AngioDynamics was aware of the '478 patent and knew that the acts, if taken, would constitute infringement of that patent.

If you find Bard has proved these elements by a preponderance of the evidence, your verdict will be in favor of Bard on its indirect infringement claim.

If you find Bard has not proved these elements by a preponderance of the evidence, your verdict will be against Bard on its indirect infringement claim.

## INSTRUCTION NO. 22

## INDIRECT INFRINGEMENT – INTENT

In order to establish active inducement of infringement, it is not sufficient that AngioDynamics' customers themselves directly infringe the claim.  Nor is it sufficient that AngioDynamics was aware of the acts by its customers that allegedly constitute the direct infringement.  Rather, in order to find active inducement of infringement, you must find either that AngioDynamics specifically intended its customers to infringe the '478 patent or believed there was a high probability that its customers would infringe the '478 patent, but deliberately avoided learning the infringing nature of its customers' acts.

The mere fact, if true, that AngioDynamics knew or should have known that there was a substantial risk that its customers' acts would infringe the '478 patent would not be sufficient for active inducement of infringement.

**INSTRUCTION NO. 23**

**DEFENSE OF INVALIDITY – GENERALLY**

Invalidity of the asserted patent claims is a defense to infringement.

A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious. Another way that a claim may be invalid is that it may have been obvious. A patent may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the "written description" requirement. In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent. The disclosure of a patent must also meet the "enablement" requirement. To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the art to make and use the invention without undue experimentation, at the time the patent application was originally filed.

**INSTRUCTION NO. 24**

**DEFENSE OF INVALIDITY – BURDEN OF PROOF**

An issued patent is accorded a presumption of validity; therefore AngioDynamics

must prove a patent claim is invalid by clear and convincing evidence.

## INSTRUCTION NO. 25

## INVALIDITY - ANTICIPATION

AngioDynamics contends that the claims of the '417, the '460, and the '478 patents are invalid because of anticipation.  In order for someone to be entitled to a patent, the invention must actually be "new."   If a product has been made, used, and disclosed to the public before the date of invention, then it is not new, and therefore the claimed invention is "anticipated."  Anticipation must be determined on a claim-by-claim basis.

For a claim to be invalid because it is not new, AngioDynamics must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent.  We call these things "anticipating prior art."

To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

**INSTRUCTION NO. 26**

**INFRINGEMENT DESPITE OTHER PATENTS**

You may hear evidence that each party in this case owns other patents and also uses its own technology in those other patents.  However, ownership of separate patents is not a defense to patent infringement.  The parties in this case can still infringe the patents asserted by the other party, even if it has its own patents in the same area.

## INSTRUCTION NO. 27

## INVALIDITY – ANTICIPATION

## PRIOR ART

Prior art to a patent may include:

(1) items that were publicly known or that have been used, on sale, or otherwise made available to the public before the filing date of the patent,

(2) publications that were published or otherwise made available to the public before the filing date of the patent, and

(3) patents and published patent applications naming another inventor that were filed before the filing date of the patent.

However, prior art does not include an item or publication that describes the inventor's own work unless it was made public more than one year before the filing date of the patent's application.

The filing date of the patent application at issue is April 25, 2006, and thus, one year before that date is April 25, 2005.

## INSTRUCTION NO. 28

## DATE OF INVENTION

In this case, you must determine the date of invention for the claimed invention.

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventors were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

## INSTRUCTION NO. 29

## INVALIDITY – OBVIOUSNESS

AngioDynamics contends that the asserted claims of the '417, the '460, and the '478 patents are invalid because of obviousness.

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

AngioDynamics may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as:

(1) whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

36

(2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4) whether the prior art teaches away from combining elements in the claimed invention;

(5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

(6) whether the change resulted more from design incentives or other market forces.

To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.  Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately.  Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed invention, such as:

a.      Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b.      Whether the invention satisfied a long-felt need;

c.      Whether others had tried and failed to make the invention;

d.      Whether others invented the invention at roughly the same time;

e.      Whether others copied the invention;

f.      Whether there were changes or related technologies or market needs contemporaneous with the invention;

g.      Whether the invention achieved unexpected results;

h.      Whether others in the field praised the invention;

i.      Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j.      Whether others sought or obtained rights to the patent from the patent holder; and

k.      Whether the inventor proceeded contrary to accepted wisdom in the field.

**INSTRUCTION NO. 30**

**LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field of vascular access ports is, you should consider all the evidence introduced at trial, including but not limited to:

(1) the levels of education and experience of the inventor and other persons actively working in the field;

(2) the types of problems encountered in the field;

(3) prior art solutions to those problems;

(4) rapidity with which innovations are made; and

(5) the sophistication of the technology.

**INSTRUCTION NO. 31**

**INVALIDITY – OBVIOUSNESS**

**SCOPE AND CONTENT OF THE PRIOR ART**

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where the party challenging the validity of the patent is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it was different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

## INSTRUCTION NO. 32

## INVALIDITY – ENABLEMENT

The patent law contains certain requirements for the part of the patent called the specification.  AngioDynamics contends that the asserted claims of the '417, the '460, and the '478 patents are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention.

To succeed, AngioDynamics must show by clear and convincing evidence that the asserted claims of the '417, the '460, and the '478 patents do not contain a sufficiently full and clear description of the claimed invention.  To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the original patent application was filed.  This is known as the "enablement" requirement.  If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of the original filing without having to conduct undue experimentation.  However, some amount of experimentation to make and use the invention is allowable.  In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of the invention;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

41

(5) the nature and predictability of the field of [identify field];

(6) the level of ordinary skill in the field of [identify field]; and

(7) the scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the [original] application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

## INSTRUCTION NO. 33

## OBVIOUSNESS: OTHER CONSIDERATIONS

Before deciding the issue of obviousness for each claimed invention, you must also consider objective indicators of nonobviousness, which may help to determine whether or not the invention would have been obvious.  Some of these factors include:

1.      Were products covered by the claim commercially successful due to the merits of the claimed invention rather than for reasons other than those found in the claim?

2.      Was there long-felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3.      Did others try, but fail, to solve the problem solved by the claimed invention?

4.      Did others copy the claimed invention?

5.      Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.      Did others in the field, or the party accused of infringement praise the claimed invention or express surprise at the making of the claimed invention(s)?

7. Did others accept licenses under asserted patent(s) because of the merits of the claimed invention?

Although you must consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.  Each of these factors must have a substantial connection to the claimed invention.  The claimed invention

does not need to be the only cause of these factors.  Other factors, like marketing and promotion, may also be present, but there must still be a substantial connection to the claimed invention.

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious.  Answering all, or some, of these questions "no" may suggest that the claims would have been obvious.  These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claims.  Even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether the party asserting obviousness has proven that the claimed invention would have been obvious.

## INSTRUCTION NO. 34

## DAMAGES: INTRODUCTION

If you find that AngioDynamics infringed any valid claim of the '417, '460, or '478 patents, you must then consider what amount of damages to award to Bard.  I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that AngioDynamics has not infringed any valid claim of the patent, or that the claims are invalid or patent ineligible, then Bard is not entitled to any damages.

The damages you award must be adequate to compensate Bard for the infringement.  They are not meant to punish an infringer.  Your damages award, if you reach this issue, should put Bard in approximately the same financial position that it would have been in had the infringement not occurred.

Bard has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Bard establishes that it more likely than not suffered.  While Bard is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Bard may be entitled to recover.  In this case, Bard seeks a reasonable royalty.  A reasonable royalty is defined as the money amount Bard and AngioDynamics would have agreed upon as a fee for use of the invention at the time prior to when infringement began.  But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more or no less than the value of the patented invention.  I will give more detailed

45

instructions regarding damages shortly.  Note, however, that Bard is entitled to recover no less than a reasonable royalty for each infringing act.

## INSTRUCTION NO. 35

## DAMAGES - REASONABLE ROYALTY - DEFINITION

A reasonable royalty is defined as an amount that the patent holder and the alleged infringer would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

**INSTRUCTION NO. 36**

**REASONABLE ROYALTY: FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

1.      the value that the claimed invention contributes to the accused product; and

2.      the value that factors other than the claimed invention contribute to the accused product.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the accused infringing party would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**INSTRUCTION NO. 37**

**WILLFUL INFRINGEMENT**

In this case, Bard argues both that AngioDynamics infringed and, further, that AngioDynamics infringed willfully.  If you have decided that AngioDynamics has infringed, you must then address the additional issue of whether or not this infringement was willful.

Willfulness requires you to determine whether Bard proved by a preponderance of evidence that the infringement by AngioDynamics was especially worthy of punishment.  You may not determine that the infringement was willful just because AngioDynamics knew of the '417 patent, the '460, and the '478 patents patent and infringed them.  Instead, willful infringement is reserved for only the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith.

To determine whether AngioDynamics acted willfully, consider all facts. These may include, but are not limited, to:

(1)     Whether or not AngioDynamics acted consistently with the standards of behavior for its industry;

(2)     Whether or not AngioDynamics intentionally copied a product of Bard's that is covered by the '417 patent, the '460, and/or the '478 patent;

(3)     Whether or not AngioDynamics reasonably believed it did not infringe or that the patent was invalid;

(4)     Whether or not AngioDynamics made a good-faith effort to avoid infringing the '417 patent, the '460, and/or the '478 patents, for example, whether AngioDynamics attempted to design around the '417 patent, the '460, and/or the '478 patents; and

(5)     Whether or not AngioDynamics tried to cover up its infringement.

AngioDynamics argues it did not act willfully because it relied on a legal opinion that advised AngioDynamics either:

(1)     that the product or method did not infringe the '417 patent, the '460 patent, and the '478 patent; or

(2)     that the '417 patent, the '460 patent, and/or the '478 patent was invalid. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.

## INSTRUCTION NO. 38

## DEPOSITION TESTIMONY

You may hear witnesses testify through deposition testimony, either by the reading of a deposition transcript or the playing of video excerpts. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. court reporter is present and records the questions and answers.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify in court during trial. If played by video, the deposition testimony may be edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited. Deposition testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

You may hear from certain corporate witnesses referred to as "Rule 30(b)(6)" witnesses for the parties. A Rule 30(b)(6) corporate witness is a person that a corporation has chosen to designate to speak on behalf of the corporation. This type of witness must be knowledgeable to speak on the specific identified topics and is required to give complete and knowledgeable answers on the corporation's behalf.

**INSTRUCTION NO. 39**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining outside.

As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all of the evidence in the case, whether direct or circumstantial or a combination of the two.  In judging the facts, it will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

**INSTRUCTION NO. 40**

**EXPERT TESTIMONY**

Expert testimony is testimony from a person who has special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience. In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

## INSTRUCTION NO. 41

## CONFIDENTIAL LABELS AND REDACTIONS

In the course of this case, the parties entered into an agreement that would protect each respective party's confidential and sensitive business information from disclosure to the public or third parties.   Under that agreement, the parties have added confidentiality labels to their documents or have redacted them.   Redacted means to obscure or remove information from documents to protect the confidential nature of the information.   You may see documents with confidentiality labels or redactions during the course of trial.   The use of confidentiality labels and redactions has no bearing on the evidence and should not be construed in any way against either party.

**INSTRUCTION NO. 42**

**TRIAL SCHEDULE**

As I mentioned earlier, this case is expected to take eight (8) days to try.  I time my trials, so I expect that the attorneys will complete their trial presentations within these time limits.   Your deliberations may require you to serve longer than those eight days, however. We will begin the day promptly at 8:30 a.m.  There will be a 15-minute break in the morning, an hour lunch break, and two 10-minute breaks in the afternoon.  We will conclude our day by 5:00 pm.

Please note that I may change the schedule to allow me to deal with matters that do not require the jury's presence.

## INSTRUCTION NO. 43

## GLOSSARY OF PATENT TERMS

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given.  The definitions in the instructions must be followed and must control your deliberations.

**Abstract:**  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment:**  A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation:**  A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Assignment:**  A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim:**  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent. An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception:** The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings:** The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements:** The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment:**  A product or method that contains the claimed invention.

**Enablement:**  A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention.  The specification of the patent must contain such an enabling description.

**Examination:**  Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:**  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:**  Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using, or selling the patented invention without permission. Inducing infringement is intentionally causing another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent.  To be a contributory infringer,

one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for noninfringing uses.

**Limitation:** A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness:**  One of the requirements for securing a patent.  To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the earlier of the filing date of the patent application or the date of invention.

**Office Action:**  A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent:**  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed (or 17 years from the date the patent issued).  When the patent expires, the right to make, use, or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO):**  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Person of Ordinary Skill in the Art:** The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention. The parties agree that a person of ordinary skill with respect to the '417, the '460, and '478 patents would be a radiologist with experience in interventional and vascular radiology, and/or an engineer with education or experience in designing access ports.

**Prior Art:** Previously known subject matter in the field of a claimed invention for which a patent is being sought. It includes issued patents, publications, and knowledge deemed to be publicly available, such as trade skills, trade practices, and the like.

**Prosecution History:** The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On:** A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice:** The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

**Requirement:** A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty:** A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:**  The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.

**INSTRUCTION NO. 44**

**JUROR NOTEBOOK**

To assist in your deliberations, you will be provided with a juror notebook that contains the following:  some blank pages for notes, copies of the asserted patents, a list of claim terms of the asserted patent claims that have been construed by the court and their constructions, a glossary of patent terms likely to be used at trial with their meaning, and a copy of these instructions.