## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARD PERIPHERAL VASCULAR, INC., | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | |
| v. | ) | |
| | ) | C.A. No. 15-218-JFB-SRF |
| ANGIODYNAMICS, INC., | ) | |
| | ) | |
| Defendant, Counterclaim-Plaintiff, and | ) | |
| Crossclaim/Third-Party Complaint | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| C. R. BARD, INC., | ) | |
| | ) | |
| Counterclaim/Third-Party Complaint | ) | |
| Defendant. | ) | |

## OPENING BRIEF IN SUPPORT OF ANGIODYNAMICS, INC.'S MOTION FOR STAY

OF COUNSEL:

John T. Moehringer
Danielle V. Tully
Michael B. Powell
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Tel: (212) 504-6000


Dated: February 4, 2022
10020534 / 42341

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Brandon R. Harper (#6418)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
bharper@potteranderson.com

*Attorneys for Defendant, Counterclaim-Plaintiff and Crossclaim / Third Party Complaint Plaintiff AngioDynamics, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 1

STATEMENT OF FACTS .................................................................... 2

    A.    Bard's Related Port ID Cases ................................................. 3

           1.    Bard Begins Its Litigation Campaign in 2012, Leading to Chief Judge Shelby's Case (D. Utah). .................................. 3

           2.    Bard Sues AngioDynamics Again in 2015, Leading to Your Honor's Case (D. Del.). ..................................... 4

           3.    Bard Sues MedComp Again in 2017, Leading to Judge Nielson's Case (D. Utah). ............................................ 5

           4.    Chief Judge Connolly (D. Del.) Has Been Assigned the Transferred AngioDynamics and Smiths Cases and the Third AngioDynamics Case Filed in 2021. ......................... 6

    B.    Most Cases Have Been Stayed Pending the *MedComp* Appeal. ...........6

    C.    The Federal Circuit's Opinion Will Not Issue Before Trial Here. .........8

LEGAL STANDARD.......................................................................... 8

ARGUMENT .................................................................................. 10

I.    THE *MEDCOMP* APPEAL WILL SIMPLIFY ISSUES HERE..................................... 11

    A.    The Federal Circuit Is Poised To Address a Case-Dispositive Issue....................11

    B.    The Patents Here Are Materially Identical to Those in the *MedComp* Appeal. ................................................................. 13

    C.    The Federal Circuit Will Likely Address Issues Beyond Ineligibility. .................15

II.    STAYING THIS CASE FOR A FEW MONTHS IS PREFERABLE TO RUSHING HEADLONG INTO PRE-TRIAL AND TRIAL. ......................... 15

III.    A STAY WILL MINIMIZE PREJUDICE AND MAXIMIZE EFFICIENCY. ............... 17

CONCLUSION................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AgroFresh Inc. v. Essentiv LLC*,
    C.A. No. 16-662-MN, 2019 WL 2327654 (D. Del. May 31, 2019) ...................................9, 12

*C.R. Bard, Inc. v. AngioDynamics, Inc.*,
    979 F.3d 1372 (Fed. Cir. 2020)..........................................................................4, 5, 11

*C.R. Bard, Inc. v. Medical Components, Inc.*,
    Nos. 22-1136, 22-1186, slip op. (Fed. Cir. Dec. 23, 2021) ......................................8

*Ebates Performance Mktg., Inc. v. MyMail, Ltd.*,
    No. 20-CV-04768, 2021 WL 2037949 (N.D. Cal. May 22, 2021)...........................9

*Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*,
    Civ. No. 21-2114, 2021 WL 2525714 (D.N.J. June 18, 2021) ................................8

*Grecia v. Adobe Inc.*,
    No. 16-cv-06283, 2018 WL 6523983 (N.D. Cal. Dec. 12, 2018)...........................10

*Horizon Meds. LLC v. Teva Pharms. USA, Inc.*,
    Civ. A. No. 20-8188, 2021 WL 1783287 (D.N.J. May 5, 2021) .......................... 8-9

*In re Koninklijke Philips Pat. Litig.*,
    No. 18-cv-01885, 2019 WL 11499521 (N.D. Cal. Nov. 13, 2019) ..............9, 15, 16

*Martin v. Malhoyt*,
    830 F.2d 237 (D.C. Cir. 1987) .............................................................................17

*Medline Indus., LP v. C.R. Bard, Inc.*,
    No. 17-cv-07216, slip op. (N.D. Ill. Jan. 31, 2022) ..........................................9, 13

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
    C.A. No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013)................10, 17

*Novartis AG v. HEC Pharm Co. Ltd.*,
    183 F. Supp. 3d 560 (D. Del. 2016)......................................................................8, 9

*Praxair Distr. Inc. v. Mallinckrodt Hosp. Prod. IP Ltd.*,
    890 F.3d 1024 (Fed. Cir. 2018)................................................................................4

*Prisua Eng'g Corp. v. Samsung Elecs. Co. Ltd.*,
    472 F. Supp. 3d 1183 (S.D. Fla. 2020) ..............................................................9, 16

*Smartflash LLC v. Apple Inc.*,
    621 F. App'x 995 (Fed. Cir. 2015) ......................................................................9, 16

*Standard Ready Mix Concrete, LLC v. Local No. 554 Int'l Bhd. of Teamsters*,
    No. 07CV22, slip op. (D. Neb. Mar. 24, 2008), ECF No. 60 (Bataillon, J.) ..........................17

**Statutes & Rules**

Fed. Cir. R. 31(a)(3).........................................................................................................8

## TABLE OF RELATED CASE ABBREVIATIONS

| Abbreviation | Related Case(s) |
|---|---|
| Judge Bataillon's Case | The present case, *C.R. Bard, Inc. v. AngioDynamics, Inc.*, C.A. No. 15-218 (D. Del.) (Bataillon, J.). |
| Chief Judge Connolly's Cases | *C.R. Bard, Inc. v. AngioDynamics, Inc.*, C.A. No. 20-1544 (D. Del.) (Connolly, C.J.);<br>*C.R. Bard, Inc. v. AngioDynamics, Inc.*, C.A. No. 21-349 (D. Del.) (Connolly, C.J.);<br>*C.R. Bard, Inc. v. Smiths Medical ASD, Inc.*, C.A. No. 20-1543 (D. Del.) (Connolly, C.J.). |
| Judge Nielson's Case | *C.R. Bard, Inc. v. Medical Components, Inc.*, No. 17-cv-00754 (D. Utah) (Nielson, J.). |
| *MedComp* Appeal | *C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. v. Medical Components, Inc.*, Appeal Nos. 22-1136 and 22-1186 (Fed. Cir.). |

Defendant AngioDynamics, Inc. ("AngioDynamics") seeks to stay all deadlines and postpone the trial currently scheduled to begin May 9, 2022, pending the Federal Circuit's decision in the related case *C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. v. Medical Components, Inc.*, Appeal Nos. 22-1136 and 22-1186 ("*MedComp* Appeal").

## INTRODUCTION AND SUMMARY OF ARGUMENT

As Bard has told the Federal Circuit, the *MedComp* Appeal and this case present "strikingly similar legal issues and facts" and there is "no material distinction" between the port identification patents that Chief Judge Shelby (D. Utah) just held ineligible under § 101 and those asserted here. (Ex. A at 2, Opening Br. of Appellants, *C.R. Bard, Inc. v. Medical Components, Inc.*, Nos. 22-1136, 22-1186 (Fed. Cir. Dec. 8, 2021), ECF No. 13.) AngioDynamics agrees. There is thus no reason for this Court to proceed to trial when the Federal Circuit will soon address these "strikingly similar" issues.

A stay is warranted for at least three reasons. *First*, the Federal Circuit is poised to resolve a central and potentially dispositive dispute: whether patents with "no material distinction" to those asserted here are ineligible under § 101. No matter how the Federal Circuit rules, waiting for the Federal Circuit's guidance is preferable to diving headlong into an expensive and burdensome trial. An affirmance will likely dispose of this case. And even a partial affirmance or reversal will significantly alter the triable issues here. Thus, proceeding without the Federal Circuit's guidance risks not only an unnecessary trial, but also that all or a portion of this case will need to be retried—for a *third time*—to comply with the Federal Circuit's forthcoming decision, resulting in a significant waste of judicial and party resources. *See infra* Part I.

*Second*, significant work remains before this case even gets to trial. The Court will need to conduct a pretrial conference and decide pretrial motions and evidentiary disputes. And the parties must prepare a pretrial order and jury instructions—which will no doubt be affected by the

outcome of the *MedComp* Appeal. These efforts are currently slated to take place during the ongoing and uncertain COVID-19 Pandemic, complicating the task of coordinating and arranging transport for trial witnesses and empaneling a jury. A stay will thus preserve both judicial and party resources at a time when both are at a premium. *See infra* Part II.

*Third*, Bard will suffer no prejudice from a stay. Quite the opposite: Bard has repeatedly advocated that Chief Judge Connolly stay his cases. He granted Bard's request in view of the clarity the Federal Circuit is poised to bring, and a stay here is appropriate for the same reasons. *See infra* Part III.

The Court should grant AngioDynamics's request for a stay.

## STATEMENT OF FACTS

Bard has sued AngioDynamics three times on nine different patents directed to identifying a power-injectable port ("Port ID patents"). Bard has also sued two other competitors, Smiths Medical, Inc. ("Smiths")[1] and Medical Components, Inc. ("MedComp")[2] on the same or similar Port ID patents. In total, Bard is asserting over a dozen different Port ID patents across six cases pending either in the District of Utah or the District of Delaware and spread across four judges: Your Honor (D. Del.), Chief Judge Connolly (D. Del.), Chief Judge Shelby (D. Utah), and Judge Nielson (D. Utah). These cases have three attributes in common: (1) they all involve Port ID patents; (2) the asserted Port ID patents belong to one of two related families; and (3) most of these cases are now stayed pending the Federal Circuit's decision in the *MedComp* Appeal.

On July 22, 2021, in Bard's first-filed case, Chief Judge Shelby granted summary judgment of ineligibility under § 101. This decision profoundly impacts the others. In its wake, Chief Judge

---

[1]   *See C.R. Bard, Inc. v. Smiths Medical ASD, Inc.*, C.A. No. 20-1543 (D. Del.) (Connolly, C.J.).

[2]   *See C.R. Bard, Inc. v. Medical Components, Inc.*, No. 12-cv-00032 (D. Utah) (Shelby, C.J.); *C.R. Bard, Inc. v. Medical Components, Inc.*, No. 17-cv-00754 (D. Utah) (Nielson, J.).

Connolly stayed his cases. MedComp moved to stay Judge Nielson's case. And AngioDynamics now moves to stay here in view of the May 9 trial date. Given the long history of these cases, a timeline of relevant events is provided below:



### A. Bard's Related Port ID Cases

#### 1. Bard Begins Its Litigation Campaign in 2012, Leading to Chief Judge Shelby's Case (D. Utah).

In January 2012, Bard sued AngioDynamics, Smiths, and MedComp in the District of Utah on three Port ID patents. Bard asserts the same three Port ID patents against both AngioDynamics and MedComp and two of these patents against Smiths. All three cases were stayed pending reexamination of the asserted patents at the USPTO. After the reexaminations concluded and the stay was lifted, the AngioDynamics and Smiths cases were transferred here because patent venue no longer existed in Utah; these cases are assigned to Chief Judge Connolly. (*See infra* Section A.3.) Because venue remained proper for MedComp, that case proceeded in Utah following the lifting of the stay.

On July 22, 2021, Chief Judge Shelby entered summary judgment of invalidity, ruling that the asserted Port ID patents are ineligible under § 101. (*See* D.I. 478-1 at 40.[3]) He held that the asserted claims as a whole are "directed to the ineligible abstract idea of communicating information and lack an inventive concept." (*Id.*) He also rejected Bard's argument that the asserted patents were eligible under the Federal Circuit's opinion in *C.R. Bard, Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1375 (Fed. Cir. 2020) ("*AngioDynamics*"). (*See* D.I. 478-1 at 35-36.) Bard has since appealed Chief Judge Shelby's decision to the Federal Circuit in the *MedComp* Appeal.[4] (*See* D.I. 489-1; Ex. A.)

### 2. Bard Sues AngioDynamics Again in 2015, Leading to Your Honor's Case (D. Del.).

In 2015, Bard sued AngioDynamics again in the District of Delaware, alleging infringement of three more Port ID patents. That case was tried before a Delaware jury in March 2019, and at the end of Bard's case-in-chief, following motions and arguments from the parties, the case was dismissed. The Court then issued an Order which, *inter alia*, granted AngioDynamics's summary judgment motions on ineligibility because "printed matter falls outside the scope of § 101" and the claims all "rely on letters or printed material." (D.I. 449 at 9 (citing *Praxair Distr. Inc. v. Mallinckrodt Hosp. Prod. IP Ltd.*, 890 F.3d 1024, 1032 (Fed. Cir. 2018)); *id.* at 10 n.9.) In disposing of this case on printed matter, this Court *did not reach other grounds for ineligibility*, including whether the claims are directed to the abstract idea of communicating information about a medical device and claim no inventive concept.

---

[3]     All cites to the docket are to this case, C.A. No. 15-218, unless otherwise stated.

[4]     MedComp's counterclaim patent was invalidated by Chief Judge Shelby on similar grounds. That decision is also on appeal to the Federal Circuit.

On appeal, the Federal Circuit analyzed this Court's opinion that the claims were "invalid as directed to printed matter," and reversed-in-part, finding that the claims contained printed matter but were "not directed *solely* to printed matter."[5] *AngioDynamics*, 979 F.3d at 1375 (emphasis added). The Federal Circuit did not answer the same question addressed by Chief Judge Shelby, nor did it rule Bard's patents eligible under the two-part *Alice* test.

Bard and AngioDynamics continue to dispute the scope of the *AngioDynamics* decision, including whether AngioDynamics may present § 101 arguments at the upcoming trial. (*Compare* D.I. 488, *with* D.I. 489.) Bard has argued to this Court—like it did without success to Chief Judge Shelby—that *AngioDynamics* should be interpreted as holding every Port ID patent valid under all eligibility theories. Chief Judge Shelby, in ruling against Bard, recognized that *AngioDynamics* addressed a limited record and a narrow eligibility issue. (*See* D.I. 478-1 at 25 (differentiating the Federal Circuit's printed matter decision from the general *Alice* framework, and performing a reasoned analysis of subject matter eligibility under *Alice*).) The Federal Circuit will soon decide who is right in the *MedComp* Appeal—making its decision highly relevant to the issues here.

### 3. Bard Sues MedComp Again in 2017, Leading to Judge Nielson's Case (D. Utah).

In 2017, Bard sued MedComp again in the District of Utah, asserting three other Port ID patents. *See C.R. Bard, Inc. v. Medical Components, Inc.*, No. 17-cv-00754 (D. Utah July 7, 2017). This case has been assigned to Judge Nielson.

Unlike Chief Judge Shelby, Judge Nielson held that the claims were patent eligible under the Federal Circuit's decision in *AngioDynamics*. (*See* D.I. 483-1 at 81:19-82:6, 85:3-11.) Judge

---

[5]   AngioDynamics notes that the Federal Circuit resolved printed matter issues—a much narrower legal question—but did not resolve all issues related to subject matter eligibility. (*See* D.I. 489.)

Nielson *did not address* whether the claims as a whole are directed to an abstract idea, as Chief Judge Shelby did. He instead created a new rule that any claim incorporating printed matter is rendered patent eligible so long as it is not directed "solely" to such printed matter. (*See* D.I. 483-1 at 81:4-10.) MedComp has moved to stay this case pending the *MedComp* Appeal. (*See infra* Part B.)

AngioDynamics respectfully disagrees with Judge Nielson's reasoning, which departs from the Supreme Court's two-part *Alice* test. Bard, on the other hand, believes Chief Judge Shelby erred and Judge Nielson got it right. Bard has raised these conflicting opinions to the Federal Circuit in the *MedComp* Appeal. (*See* Ex. A at 26-29.) The Federal Circuit is now poised to provide the needed clarity to resolve this very disagreement.

### 4. Chief Judge Connolly (D. Del.) Has Been Assigned the Transferred AngioDynamics and Smiths Cases and the Third AngioDynamics Case Filed in 2021.

In 2020, Chief Judge Shelby transferred the cases against AngioDynamics and Smiths to this District, (*see supra* Section A.1). Both transferred cases have been assigned to Chief Judge Connolly. In 2021, Bard filed a third Port ID case against AngioDynamics, which is also assigned to Chief Judge Connolly. All of these cases have been stayed pending the *MedComp* Appeal, (*see infra* Section B).

### B. Most Cases Have Been Stayed Pending the *MedComp* Appeal.

Following Chief Judge Shelby's grant of summary judgment, Bard requested that Chief Judge Connolly stay the transferred cases against AngioDynamics and Smiths. Chief Judge Connolly granted Bard's request but went one step further—he *sua sponte* stayed the 2021 AngioDynamics case for the same reasons Bard sought to stay the transferred cases. (*See* Ex. B at 24:7–25:25, Dec. 21, 2021 Hr'g Tr., Case Nos. 20-1543, 20-1544 (D. Del.) (Connolly, C.J.); *see also* C.A. No. 20-1544, D.I. 254; C.A. No. 21-349, D.I. 25; C.A. No. 20-1543, D.I. 284.) Bard

concurred in Chief Judge Connolly's decision to stay all three cases, including the 2021 AngioDynamics case. (*See* Ex. B at 5:17–6:12.)

In affirmatively advocating for a stay before Chief Judge Connolly, Bard argued that the "sensible approach" would be to stay and not dismiss the case until any appeals concluded: "[t]here is no need to waste this Court's time and resources while that is being resolved[.]" (C.A. No. 20-1544, D.I. 246 at 3; *see* Ex. B at 5:22–6:12.) Bard asserted that the claims at issue in his cases and in this case are "indistinguishable for [S]ection 101 purposes," and cited Judge Nielson's decision that the claims at issue in that litigation are "materially indistinguishable" from those in this case. (C.A. No. 20-1544, D.I. 246 at 6.)

At oral argument, Chief Judge Connolly echoed Bard's sentiments, emphasizing that the "Federal Circuit's decision with respect to Judge Shelby's order could simplify the issues." (Ex. B at 24:15-17.) Further, Chief Judge Connolly acknowledged the overlapping eligibility issues presented by all of Bard's Port ID cases:

> "[T]here's an overlap of issues, and we're dealing with really the precise issues that are before me in the 101 motions, and especially an area of law that the Federal Circuit itself has often characterized as being difficult and involving case law that's not very consistent. I think it would be very, very efficient for me and would simplify the matters before m[e] to wait until I hear from the Federal Circuit and its judgment with respect to Judge Shelby's decision . . . It's not efficient and the burdens are very substantial and could be greatly lessened with a ruling by the Federal Circuit with respect to the appeal from Judge Shelby."

(*Id.* at 24:17-25:1, 26:19-22.) He thus stayed every Port ID case before him.

On January 12, MedComp moved to stay Judge Nielson's case pending the *MedComp Appeal*. (*See* Mot. to Stay, *C.R. Bard, Inc. v. Medical Components, Inc.*, No. 17-cv-00754 (D. Utah Jan. 12, 2022), ECF No. 857.) Bard opposes this stay request despite previously advocating for a stay before Chief Judge Connolly. (*See* Opp'n to Mot. to Stay, *C.R. Bard, Inc. v. Medical*

*Components, Inc.*, No. 17-cv-00754 (D. Utah Jan. 26, 2022), ECF No. 859.) Judge Nielson has not yet ruled.

### C.    The Federal Circuit's Opinion Will Not Issue Before Trial Here.

The Federal Circuit's decision is unlikely to issue prior to the trial currently scheduled in this case. Bard filed its opening brief on December 8, 2021. MedComp's responsive brief/cross-appeal brief is due to be filed by March 18, 2022, with Bard's reply/response then due April 27, 2022, and MedComp's reply finally due by May 18, 2022—after the scheduled start of trial here. (*See* Order on Mot. at 1-2, *C.R. Bard, Inc. v. Medical Components, Inc.*, Nos. 22-1136, 22-1186 (Fed. Cir. Dec. 23, 2021), ECF No. 17); Fed. Cir. R. 31(a)(3). A stay is the only way the Court can benefit from the Federal Circuit's guidance.

## LEGAL STANDARD

Courts have discretion whether to stay litigation. *Novartis AG v. HEC Pharm Co. Ltd.*, 183 F. Supp. 3d 560, 562 (D. Del. 2016). Courts consider "the competing interests of the parties and attempt to maintain an even balance." *Id.* Guiding this consideration are the following factors: "(1) whether a stay will simplify the issues and trial of the case, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Id.* A stay "is particularly appropriate, and within the court's sound discretion, where the outcome of another case may substantially affect or be dispositive of the issues in a case pending before a district court." *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, Civ. No. 21-2114, 2021 WL 2525714, at *3 (D.N.J. June 18, 2021) (internal citation and quotations omitted).

A stay can simplify the issues even if different claims or even a different patent is on appeal elsewhere. Indeed, a pending decision merits a stay when it might "provide discussion of issues" and "simplify [the] Court's eventual consideration of those issues." *Horizon Meds. LLC v. Teva*

*Pharms. USA, Inc.*, Civ. A. No. 20-8188, 2021 WL 1783287, at *1 (D.N.J. May 5, 2021) (granting a stay because "it is very much in the interest of judicial economy and the preservation of everyone's resources"); *Novartis AG*, 183 F. Supp. 3d at 562 (noting that a decision on invalidity may moot all claims, and that in any event "th[e] Court will likely benefit from the Federal Circuit's guidance"); *see also Ebates Performance Mktg., Inc. v. MyMail, Ltd.*, No. 20-CV-04768, 2021 WL 2037949, at *1 (N.D. Cal. May 22, 2021) (finding a stay appropriate where the appellate case involved the same invalidity issues and the patents contained the same specifications and similar limitations).

That a trial date may have been set is not dispositive, as even a stay a few months before trial may obviate the need for "substantial work" in the pretrial process. *See In re Koninklijke Philips Pat. Litig.*, No. 18-cv-01885, 2019 WL 11499521, at *2 (N.D. Cal. Nov. 13, 2019); *AgroFresh Inc. v. Essentiv LLC*, C.A. No. 16-662-MN, 2019 WL 2327654, at *2 (D. Del. May 31, 2019) (staying the case despite its "advanced stage" because "any weight given to this factor is outweighed by the likelihood that the issues involved in summary judgment and for trial will be simplified by a stay"); *see also Prisua Eng'g Corp. v. Samsung Elecs. Co. Ltd.*, 472 F. Supp. 3d 1183, 1186 (S.D. Fla. 2020) (ruling in favor of a stay late in litigation to wait for the P.T.A.B. to review the validity of asserted claims); *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005-06 (Fed. Cir. 2015) (affirming the district court's decision to stay proceedings on "the eve of trial" pending P.T.A.B. review "[d]espite the substantial time and effort already spent in this case, the most burdensome task is yet to come"—*i.e.*, a jury trial).[6]

---

[6]     In a separate case, Bard cited *Smartflash* and *Prisua Engineering* in support of its motion to stay pending a ruling on validity by the P.T.A.B. (*See* Bard's Mot. to Stay at 12, *Medline Indus., LP v. C.R. Bard, Inc.*, No. 17-cv-07216 (N.D. Ill. Sept. 27, 2021), ECF No. 353.) The court in that case granted Bard's motion to stay. (*See* Ex. D, Order, *Medline*, No. 17-cv-07216 (N.D. Ill. Jan. 31, 2022), ECF No. 367.)

The "mere potential for delay is insufficient alone to establish *undue* prejudice" to the non-movant. *See Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-1744-GMS, 2013 WL 3353984, at *2 (D. Del. July 2, 2013). It is difficult for a party to show prejudice when, as here, it has previously accepted or requested a stay based on the forthcoming appellate decision. *See Grecia v. Adobe Inc.*, No. 16-cv-06283, 2018 WL 6523983, at *2 (N.D. Cal. Dec. 12, 2018) (finding that plaintiff did not show any harm as a result of stay because plaintiff had stipulated to a stay three times).

## <u>ARGUMENT</u>

A stay is warranted: Bard and AngioDynamics dispute whether the Federal Circuit's *AngioDynamics* decision definitively decided the eligibility of Bard's Port ID patents—including the patents asserted here. Chief Judge Shelby has come down on the side of AngioDynamics, holding ineligible the asserted claims of three Port ID patents nearly identical to those asserted here. The Federal Circuit is now set to answer this exact question—whether Bard's patents are eligible under § 101—once and for all. The Federal Circuit's decision will inevitably affect the claims and defenses here, narrowing the issues to be litigated. *See infra* Part I.

It would be a waste of judicial and party resources to go through an entire trial, only to retry or rebrief the same issues depending on the outcome of the *MedComp* Appeal. Indeed, an affirmance may obviate the need for trial in the first place. Because the Federal Circuit will not decide the appeal before trial begins here, staying this case is the only way to avoid the risks of unnecessary and duplicative litigation. And given the considerable work left to be done before, during, and after trial, a stay would preserve significant party and scarce judicial resources as the parties await the Federal Circuit's forthcoming decision. *See infra* Part II.

On top of that, neither party would suffer any prejudice from a stay. Bard itself has asked this Court to stay similar cases pending resolution of the *MedComp* Appeal. In fact, the parties

would be prejudiced by the lack of a stay: they would be forced to litigate without the Federal Circuit's guidance on ineligibility and the scope of the Federal Circuit's *AngioDynamics* decision. *See infra* Part III.

**I.      THE *MEDCOMP* APPEAL WILL SIMPLIFY ISSUES HERE.**

**A.      The Federal Circuit Is Poised To Address a Case-Dispositive Issue.**

AngioDynamics and Bard dispute the critical issue of whether the Federal Circuit has resolved the ineligibility of its Port ID patents. (*Compare* D.I. 488, *with* D.I. 489.) In *AngioDynamics*, the Federal Circuit held that those claims were "not directed solely to printed matter," *AngioDynamics*, 979 F.3d at 1375, and therefore reversed the finding that the claims were ineligible under the printed matter doctrine. The Federal Circuit *did not address or decide* whether the claims were patent ineligible under any other ineligibility theory, including for being directed to an abstract idea.

AngioDynamics intends to present arguments that the claims are patent ineligible for claiming an abstract idea—the communication of information about a medical device—with no inventive concept. Indeed, this was the basis for Chief Judge Shelby's decision. (*See* D.I. 478-1 at 32 ("Because each asserted claim at issue here requires the use of an identifier to communicate information about the power injectability of the underlying port and provides no functional improvement to the port itself or the X-ray technology used to view the radiopaque identifiers, the court finds the claims are directed to an abstract idea.").) Bard, however, asserts that this argument is foreclosed for all Port ID patents, and that the *AngioDynamics* opinion is conclusive as to all ineligibility theories—even those not addressed by the Federal Circuit in *AngioDynamics*. (*See* D.I. 488.) This argument is central to Bard's appeal of Chief Judge Shelby's decision. (*See generally* Ex. A at 23-41.) But it is unsupported by the law.

The parties' disagreement highlights how the *MedComp* Appeal will significantly impact this case. A total affirmance will likely dispose of this case given that all parties recognize that there is no "material distinction" between the patents here and those on appeal to the Federal Circuit. (Ex. A at 2.) A partial affirmance—where the Federal Circuit interprets and applies its *AngioDynamics* decision—would also have a profound impact on the factual and legal issues here. But until the Federal Circuit rules, it is unclear what this impact might be. Although unlikely, it is possible the Federal Circuit adopts Bard's position that *AngioDynamics* resolved every ineligibility defense, including those not before the court. But even this outcome will affect trial: it will eliminate the need to prepare and present ineligibility at trial, conserving party and Court resources. Thus, no matter what the Federal Circuit rules, its forthcoming decision will "reduce or at least clarify issues" that the parties and this Court would have to address at trial. *AgroFresh*, 2019 WL 2327654, at *2.

Chief Judge Connolly agrees that the *MedComp* Appeal will significantly impact the issues across all cases:

> [COUNSEL FOR ANGIODYNAMICS]: What the Federal Circuit says about Judge Shelby's opinion will affect Judge Bataillon's trial, Your Honor.
>
> THE COURT: That makes sense to me. I get that. That's what's motivating me to think I need to put a stay in my case, because I think what the Federal Circuit says would very much affect what I would consider with respect to the merits of the arguments on the 101.

(Ex. B at 22:19-23:1; *see id.* at 22:4-5.) Even if the issues clarified relate only to § 101, and not to the issues of noninfringement or invalidity under other theories, the eligibility issue "is not an insubstantial part [of the case] and substantial simplification is almost certain." *AgroFresh*, 2019 WL 2327654, at *2.

Given the multiple inconsistent results by various authorities on the eligibility of Bard's patents—including the conflicting Utah opinions by Chief Judge Shelby and Judge Nielson—any ineligibility decision following trial here is likely to be challenged on appeal. On the other hand, the Federal Circuit's clarification is likely to resolve these issues without need for further litigation. As Bard has argued when seeking a stay in another case, "[g]oing forward now, with the significant uncertainty cast over this case by the Federal Circuit's decision and remand, creates a substantial likelihood the Court and the parties will need to redo large portions of the case[.]" (*See* Bard's Mot. to Stay at 2, *Medline*, No. 17-cv-07216 (N.D. Ill. Sept. 27, 2021), ECF No. 353; *see also supra* note 7.) So too here. Thus, significant issues can be simplified and avoided by staying this case and awaiting the Federal Circuit's guidance.

**B.     The Patents Here Are Materially Identical to Those in the *MedComp* Appeal.**

A stay would simplify the issues because the patents here are nearly identical to those in the *MedComp* Appeal. Bard affirmatively sought a stay of Chief Judge Connolly's cases from this Court, arguing that the claims at issue in all of its Port ID patent cases are "indistinguishable for [S]ection 101 purposes." (C.A. No. 20-1544, D.I. 246 at 12.) On top of that, Bard told the Federal Circuit that "[t]here is no material distinction, at *Alice* step one, between the claims at issue in [Your Honor's Case] and the claims at issue [in the *MedComp* Appeal]." (Ex. A at 2; *see also id.* at 25-26 (Bard comparing asserted claims from *MedComp* Appeal to those asserted here and arguing that both are "directed to the same class of invention" and both "claim various structural features of a port and radiopaque indicia that enable medical practitioners to identify the port as being power injectable after implantation.").)

These statements are as true now as they were then. The patents in the *MedComp* Appeal are nearly identical to those asserted here, come from related families, share similar specifications, and share many of the same limitations. The chart below compares Claim 1 of U.S. Patent No.

7,947,022 (asserted in the *MedComp* Appeal) and Claim 5 of U.S. Patent No. 8,475,417 (asserted here):

| Claim 1 of '022 Patent | Claim 5 of '417 Patent |
|---|---|
| 1. An access port for providing subcutaneous access to a patient, comprising: | 5. An assembly for identifying a power injectable vascular access port,[7] comprising: |
| a body defining a fluid cavity accessible by inserting a needle through a septum; | a vascular access port comprising a body defining a cavity, a septum, and an outlet in communication with the cavity; |
| and at least one radiopaque identification feature of the access port | a first identifiable feature incorporated into the access port perceivable following subcutaneous implantation of the access port, the first feature identifying the access port as suitable for flowing fluid at a fluid flow rate of at least 1 milliliter per second through the access port;<br><br>a second identifiable feature incorporated into the access port perceivable following subcutaneous implantation of the access port, the second feature identifying the access port as suitable for accommodating a pressure within the cavity of at least 35 psi, |
| observable via imaging technology subsequent to subcutaneous implantation of the access port, | wherein one of the first and second features is a radiographic marker perceivable via x-ray; |
|  | and a third identifiable feature separated from the subcutaneously implanted access port, the third feature confirming that the implanted access port is both suitable for flowing fluid at a rate of at least 1 milliliter per second through the access port and for accommodating a pressure within the cavity of at least 35 psi. |
| the at least one radiopaque identification feature including one or more alphanumeric characters identifying the access port as a power-injectable port. | wherein the radiographic marker is one or more radiographic letters. |

---

[7]   A "power injectable access port" has been construed as one "suitable for flowing fluid at a rate of at least 1 milliliter per second through the access port and for accommodating a pressure within the cavity of at least 35 psi."

As shown, the limitations are materially indistinguishable. Both recite "an access port." Both claim that the access port be made of a body defining a cavity, and that the access port has a septum which can be used to access the cavity. Both claims require a feature used for identification, and require that this feature be observable via imaging (such as x-ray) following subcutaneous implantation of the access port. Both claims require that the identification feature communicate certain information about the access port, and both claims require that the identification feature include "letters" or "alphanumeric characters." The striking overlap in the limitations of the claims underlines that the claims cover nearly identical subject matter, and a decision about the eligibility of one set of claims would no doubt implicate the eligibility of the other set.

### C.   The Federal Circuit Will Likely Address Issues Beyond Ineligibility.

The Federal Circuit's guidance in the *MedComp* Appeal may impact issues here beyond eligibility. There is significant overlap between anticipation and obviousness under §§ 102, 103 and ineligibility under § 101. The Federal Circuit is poised to address Bard's argument that it invented power-injectable ports, Bard's representations to the USPTO about the triviality of putting a radiographic marker on a port, and Bard's representations to the FDA that preexisting ports were power injectable. All are crucial here and cover many claims and defenses. A stay would preserve the parties' and Court's resources and prevent the need for re-litigating all of these issues following the Federal Circuit's decision.

## II.   STAYING THIS CASE FOR A FEW MONTHS IS PREFERABLE TO RUSHING HEADLONG INTO PRE-TRIAL AND TRIAL.

Trial is scheduled for May 9, 2022. The advantages of simplifying issues before trial strongly favors a stay, and courts have granted stays even when faced with more immediate trials. In *Koninklijke*, for example, the case was stayed pending a Federal Circuit decision two months before trial. *See* 2019 WL 11499521, at *2. The court granted a stay despite the resources already

spent on the litigation, particularly given that dispositive motions remained open and the pretrial conference was looming. *See id.* The court noted "the substantial work that still must be done in this case" and held that—even despite the trial date having been set and fast approaching—the factor supported a stay. *Id.*; *see also Prisua Eng'g*, 472 F. Supp. 3d at 1186; *Smartflash*, 621 F. App'x at 1005-06.

Here too, "substantial work" remains to be done before the trial can move forward—work that can potentially be avoided by staying the case and allowing the Federal Circuit to simplify issues:

- The parties will have to have a pretrial conference and the Court will have to issue its pretrial order.

- The parties and Court will have to manage fluctuating travel restrictions and COVID-19 protocols likely to complicate the already complex task of trying a case.

- The Court will have to decide pretrial motions—including motions on eligibility under § 101—and issue jury instructions, both of which are likely to be disputed given the parties' different positions on the *MedComp* Appeal and *AngioDynamics* decision.

This significant work may become unnecessary after the *MedComp* Appeal.  It could also be wasted if the case has to be retried following the decision. Indeed, proceeding to trial risks having to try this case for a *third time* depending on the outcome of the *MedComp* Appeal.

A stay awaiting the Federal Circuit's decision thus can avoid these issues.

III.     **A STAY WILL MINIMIZE PREJUDICE AND MAXIMIZE EFFICIENCY.**

No prejudice would result to either party as the result of a stay. The mere existence of a potential delay does not create *de facto* prejudice. *See Neste Oil*, 2013 WL 3353984, at *2. And Bard cannot point to any specific evidence that waiting a few months for the Federal Circuit's guidance will cause prejudice. Quite the opposite, Bard advocated for a stay before Chief Judge Connolly because of the clarity the Federal Circuit is poised to bring. (*See* C.A. No. 20-1544, D.I. 246 at 16-17.) The same rationale holds true here. Indeed, waiting a few months for the Federal Circuit's guidance is preferable to holding a trial that could be rendered unnecessary or require a do-over. *See* Ex. C, *Standard Ready Mix Concrete, LLC v. Local No. 554 Int'l Bhd. of Teamsters*, No. 07CV22, slip op. at 4, (D. Neb. Mar. 24, 2008), ECF No. 60 (Bataillon, J.) (granting a stay because "judicial efficiency would best be served" by allowing related cases to resolve and "to do otherwise might permit three conflicting decisions"). Thus, denying AngioDynamics's request to stay is the only outcome guaranteed to cause prejudice.

Bard's own arguments to Chief Judge Connolly make the case for a stay here:

• The "sensible approach" is "to stay" proceedings because at the end of the appeal, "this Court will be positioned either to enter judgment (if Judge Shelby is affirmed) or to proceed on a new schedule[.]" (C.A. No. 20-1544, D.I. 246 at 3.)

• "There is no need to waste this Court's time and resources while that is being resolved in Utah and in the Federal Circuit." (*Id.*)

• "This Court should 'stay its own proceedings to await the ultimate disposition of the judgment on appeal.'" (*Id.* at 16 (quoting *Martin v. Malhoyt*, 830 F.2d 237, 265 (D.C. Cir. 1987).)

- "[W]e think Judge Shelby got it wrong. The defendants think he got it right. That issue is before the Federal Circuit, and only the Federal Circuit right now can decide that. And the outcome of that appeal may, probably will resolve the defendants' motions and at the very least, we think that appeal is going to affect how those cases should proceed[.]" (Ex. B at 5:14-20.)

- "Even to different claims that weren't before Judge Shelby and to claims that he decided *sua sponte*, it makes a lot more sense for us to see what the Federal Circuit does pending appeal than for Your Honor to rule before then[.]" (*Id*. at 5:25–6:4.)

- "[W]e just don't see why Your Honor should be spending time on these cases when the Federal Circuit is spending time on them and when its resolution is going to define the issue." (*Id*. at 6:9-12.)

Bard cannot reasonably take a different position here. Nor can Bard credibly claim delay when AngioDynamics moves to stay here mere weeks after these arguments persuaded Chief Judge Connolly to stay the three cases pending before him. As Bard itself explains, a stay will allow the parties to litigate the claims under the Federal Circuit's guidance, and will allow this case to reach resolution without uncertainty.

## <u>CONCLUSION</u>

For the above reasons, AngioDynamics respectfully requests that this Court exercise its discretion to stay all deadlines until the Court of Appeals for the Federal Circuit issues its decision in *C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. v. Medical Components, Inc.*, Appeal Nos. 22-1136 and 22-1186.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

John T. Moehringer
Danielle V. Tully
Michael B. Powell
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY  10281
Tel:  (212) 504-6000

By: */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Brandon R. Harper (#6418)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    bharper@potteranderson.com

Dated:  February 4, 2022
10020534 / 42341

*Attorneys for Defendant, Counterclaim-*
*Plaintiff and Crossclaim / Third Party*
*Complaint Plaintiff AngioDynamics, Inc.*