IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BARD PERIPHERAL VASCULAR, INC.,

        Plaintiff and Counterclaim-Defendant,

        v.

ANGIODYNAMICS, INC.,

        Defendant, Counterclaim-Plaintiff,

        v.

C. R. BARD, INC.,

        Counterclaim/Third-Party Complaint
Defendant.

C.A. No. 15-218-JFB-SRF

JURY TRIAL DEMANDED

REDACTED - PUBLIC VERSION

## JOINT PROPOSED FINAL PRETRIAL ORDER

POTTER ANDERSON &CORROON LLP
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Brandon R. Harper (#6418)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
bharper@potteranderson.com

*Attorneys for AngioDynamics, Inc.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227))
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for C.R. Bard, Inc. and
Bard Peripheral Vascular, Inc.*

OF COUNSEL:

John T. Moehringer
Danielle V. Tully
Michael B. Powell
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY  10281
(212) 504-6000

OF COUNSEL:

Steven C. Cherny
Matthew A. Traupman
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

Lauren N. Martin
Anne-Raphaëlle Aubry
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA  02199
(617) 712-7100

On June 19, 2018, the Court entered a pretrial order in this action for the prior trial that took place on March 1-7, 2019 (the "2019 Trial").  The parties agreed to update the pretrial order for the remand trial scheduled for jury selection on November 14, 2022.  By agreement of the parties and subject to approval of the Court, the Court hereby enters the following Final Pretrial Order.

## STATEMENT OF THE NATURE OF THE ACTION AND THE PLEADINGS IN WHICH THE ISSUES ARE RAISED

1.      This is an action for patent infringement.  Bard Peripheral Vascular, Inc. ("Bard") asserts that AngioDynamics, Inc. ("AngioDynamics") infringes U. S. Patent Nos. 8,475,417 ("the '417 patent"), 8,545,460 ("the '460 patent"), and 8,805,478 ("the '478 patent") (collectively, the "Patents-In-Suit" or "Asserted Patents").  Specifically, Bard asserts claims 5, 6, 12 and 13 of the '417 patent, claims 2 and 4 of the '460 patent, and claims 3, 5, 9, and 11 of the '478 patent.

2.      AngioDynamics denies these allegations of infringement, asserts various affirmative defenses, and seeks declaratory judgments that the Patents-In-Suit are invalid, not infringed, and unenforceable.  AngioDynamics further asserts counterclaims of invalidity, noninfringement, and various equitable defenses, including inequitable conduct, unclean hands, and equitable estoppel, against Bard.  AngioDynamics also asserts crossclaims/third-party claims of inequitable conduct and unclean hands against C. R. Bard—an original party to the litigation.[1]

3.      The issues to be tried in this case are raised in the following pleadings:

Bard's Supplemental Complaint (D.I. 190-1)

AngioDynamics's First Amended Answer and Counterclaims Against BPV, and First Amended Crossclaims/Third-party Claims Against C. R. Bard (D.I. 211)

---

[1]      C. R. Bard executed an assignment of the patents-in-suit to Bard Peripheral Vascular in July 2017. C. R. Bard is no longer a Plaintiff.

Bard's Response to AngioDynamics's First Amended Counterclaims (D.I. 214)

C. R. Bard's Response to AngioDynamics's First Amended Crossclaims/Third-Party Complaint Against C. R. Bard (D.I. 215)

**STATUTORY BASIS FOR JURISDICTION**

4.      This action arises under the patent laws of the United States, Title 35 U.S.C § 1 *et seq.* and the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202).

5.      The parties agree that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a), and 2202.

6.      No party currently disputes personal jurisdiction or venue.

7.      [**AngioDynamics's position:** Questions have been raised about standing that are currently being litigated in *C.R. Bard, Inc. v. Medical Components, Inc.*, No. 17-cv-00754 (D. Utah) (Nielson, J.). To the extent new information is revealed in that proceeding, AngioDynamics reserves the right to challenge standing should it become clear that Bard does not have standing to sue.] [**Bard's position:** AngioDynamics has not challenged standing at any point in this litigation and does not purport to do so here. As such, it has waived that argument. Furthermore, standing to bring a patent infringement suit is not a jurisdictional issue. *Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225, 1236-37 (Fed. Cir. 2019) ("We therefore firmly bring ourselves into accord with *Lexmark* and our sister circuits by concluding that whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction."). AngioDynamics' vague reservation of rights to challenge standing at some unspecified point in the future is inappropriate.]

**STATEMENT OF ADMITTED FACTS REQUIRING NO PROOF**

8.      The facts stated in attached Exhibit 1 are not disputed.

9.      [**AngioDynamics's Position:** There are additional facts that AngioDynamics

believes cannot be reasonably disputed, attached hereto as Exhibit 1A.  These include facts

admitted in requests for admission and in Bard's responses to AngioDynamics's claims, and

facts admitted by Bard's employees and expert witnesses during the 2019 trial and subsequently

relied on by this Court and acknowledged by the Federal Circuit. These facts are supported by

citations to the Bard admission and/or Court holding that render the fact no longer disputable, to

the extent they ever were.  These facts cannot reasonably be disputed, and relitigating such facts

would be a waste of party and judicial resources, particularly given that the present remand case

is intended to be narrower than the one originally tried in 2019.  As merely one example of a fact

that Bard is refusing to acknowledge, this Court found that "Bard's expert, Powers, admitted that

Bard did not invent palpation." *C R Bard Inc. v. AngioDynamics Inc.*, 382 F. Supp. 3d 332, 339

(D. Del. 2019). Indeed, this is an uncontroversial fact – palpation has been known for thousands

of years.  But Bard refuses to acknowledge the fact, and demands that it be disputed.  Bard goes

so far as to dispute that "All ports have a geometric shape," despite its expert testifying as much.

*See* Ex. 1A; Dr. Clark 2/23/17 Dep. Transcript at 135:12-22.  Undisputed facts are not intended

to usurp the role of the jury, as Bard contends.  To the contrary, the intention of undisputed facts

is to narrow the trial and not waste the Court's and jurors' valuable time. Judicial conservation is

particularly important where the trial is currently scheduled in the days leading up to the

Thanksgiving holiday.  And while Bard contends the issue of whether C.R. Bard properly

assigned the three Asserted Patents should not in dispute, that very issue is being actively

litigated in another trial, and therefore this fact is literally disputed.  AngioDynamics's merger

with Rita, on the other hand, has never been and is not disputed in any litigation.] [**Bard's**

**Position:**  AngioDynamics is trying to usurp the jury's fact-finding role by asking the Court to

rule that certain facts cannot be disputed before trial even happens.  That is inappropriate.  The

Federal Circuit found genuine disputes of fact regarding invalidity, and AngioDynamics must establish facts underlying its invalidity defense and allow the jury to do its job.  AngioDynamics simply must meet its burden of proof, just as Bard must do.  For example, AngioDynamics is putting Bard to its proofs to establish patent ownership—which Bard does not believe is reasonably in dispute—and refused to add to the statement of undisputed facts the fact that C.R. Bard assigned the three Asserted Patents to Plaintiff BPV.  As but one example of the impropriety of this exercise, one of the facts that AngioDynamics contends cannot be reasonably disputed is the date that that AngioDynamics allegedly "merged" with Rita.  AngioDynamics cites one of its own production documents for this fact.  There is absolutely no basis for AngioDynamics to contend that Bard must admit this fact based on an AngioDynamics document.  The proper way for AngioDynamics to establish these facts is through admissible evidence and testimony, subject to cross examination and rebuttal from Bard.  Bard has not disputed facts that it admitted in response to requests for admission, nor does Bard dispute facts admitted in its Answer to AngioDynamics' counterclaims.  Bard disagrees that by allegedly "acknowledging" certain facts, the Federal Circuit has rendered those facts "undisputed." Indeed, the 2019 Trial ended before Bard began its rebuttal case on validity issues.  Thus, the record before the Federal Circuit was necessarily incomplete and not decided by the finder of fact, the jury.]

## I.      STATEMENT OF DECIDED EVIDENTIARY ISSUES

10.     [**AngioDynamics's Position:**  During the 2019 Trial, the Court resolved several evidentiary disputes regarding the admission of testimony and documentary evidence.  These decided evidentiary issues are now law of the case.  To that end, AngioDynamics has compiled a chart of decided evidentiary issues attached hereto as Exhibit 1B.  Given that Bard has represented to the Court that it has already presented its affirmative case and no surprises or

changes are anticipated, it should have no objection to streamlining the trial and conserving party and judicial resources by not rehashing evidentiary disputes that have already been argued and decided. To the extent any of these rulings are affected by the Federal Circuit's decision, the parties are certainly free to raise such effects with the Court.  But as a general matter it would be inefficient and a waste of party resources to relitigate every decided issue because of Bard's claim that the Federal Circuit "may provide clarity" to the rulings.  To the extent Bard believes that AngioDynamics's characterization of any ruling is incorrect, AngioDynamics has provided the citation for the ruling and the Court may interpret the prior ruling as the Court decides is appropriate.  Bard was welcomed to provide its own table of prior rulings and has declined to do so.]  [**Bard's Position:**  Bard objects to AngioDynamics' inclusion of a chart purporting to show decided evidentiary issues.  Bard disagrees that the evidentiary rulings in the 2019 trial are law of the case.  Each evidentiary issue was context and fact specific, and each issue was decided by taking into account the circumstances and context for which the exhibit was being offered during the 2019 Trial.  For example, a document used with one witness may be objectionable based on lack of foundation, but that same document may not be objectionable with another witness.  As a result, it is not practical, useful or feasible to adopt wholesale the 2019 evidentiary rulings for this trial because the facts and circumstances surrounding each issue may well be different. Furthermore, the Federal Circuit decision may provide clarity regarding the type of evidence relevant to prove, for example, infringement (*C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1379 (Fed. Cir. 2020)), and that may impact evidentiary rulings from the prior trial. Finally, AngioDynamics's proposed chart does not accurately identify the Court's evidentiary rulings.  As but one example, AngioDynamics contends that the Court's comment that "first of all, the only -- well, your invention only basically has to do with the marker. That's all it has to

do with. You have not patented -- this case is not about the port itself. It's just about the marker. So I'm not sure how your profits relate to the marker. Tell me about how it's relevant" during oral argument on AngioDynamics's objection to PX522, which is a spreadsheet with sales data for Bard's port products, is an evidentiary "Ruling" that "the invention is for the marker, not the port itself."]

## II.   ISSUES OF FACT THAT REMAIN TO BE LITIGATED AND EXPECTED PROOFS

11.   Bard's statement of Issues of Fact that remain to be litigated and expected proof is attached as Exhibit 2.

12.   AngioDynamics's statement of Issues of Fact that remain to be litigated and expected proof is attached as Exhibit 3.

## III.   ISSUES OF LAW THAT REMAIN TO BE LITIGATED

13.   Bard's Statement of Issues of Law that remain to be litigated is attached as Exhibit 4.

14.   AngioDynamics's Statement of Issues of Law that remain to be litigated is attached as Exhibit 5.

## IV.   ORDER OF PROOF AT TRIAL

15.   The Court set the order of proof at trial as follows:

Opening Statements;

BPV's case-in-chief for infringement, willfulness and damages;

AngioDynamics's case-in-chief for its claims of invalidity, followed by its defense to infringement, willfulness, and damages;

BPV's invalidity defense and rebuttal;

AngioDynamics' rebuttal;

Closing Arguments.

1.  D.I. 361; D.I. 486 ("The order of presentation and allotted trial time set forth in this Courts earlier order remain in effect.")

### V.   EQUITABLE DEFENSES

16.   AngioDynamics' equitable defenses, including inequitable conduct, will be tried in a separate bench trial.  D.I. 358 at 5.

### VI.   EXHIBITS

17.   Bard's list of pre-marked exhibits to be offered at trial is attached hereto as Exhibit 6.

18.   Attached as Exhibit 6A are AngioDynamics's objections to Bard's exhibit list.

19.   AngioDynamics's list of pre-marked exhibits to be offered at trial is attached hereto as Exhibit 7.

20.   Attached as Exhibit 7A are Bard's objections to AngioDynamics's exhibit list.

21.   Exhibits not listed will not be admitted unless good cause is shown, subject to paragraph 23 below.

22.   Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections. Each party reserves the right to object to the admissibility of any exhibit offered by the other party, at the time such exhibit is offered, in view of the specific context in which such exhibit is offered.

23.   These exhibit lists include exhibits that might not be introduced into evidence, and inclusion of an exhibit on a party's exhibit list is not an admission that such exhibit would be admissible if offered by another party. A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial. Any exhibit not identified on an exhibit list may still be used at trial for the purposes of cross-examination, impeachment, or rehabilitation, if otherwise properly usable for such purposes.

24.     Any trial exhibit that a party wishes to display to the jury during its opening statement shall be provided to the other side no later than 5:00 p.m. the day before opening statements are set to be presented.

25.     Demonstratives to be used during opening statements shall be provided to the other side no later than 5:00 p.m. the day before opening statements are set to be presented.

26.     Objections to opening exhibits and demonstratives will be served no later than 7:00 p.m. the day before opening statements are set to be presented.

27.     The parties will meet and confer regarding objections to demonstratives and exhibits to be used during opening at 9:00 p.m. the day before opening statements are set to be presented.  Any remaining disputes regarding opening exhibits and demonstratives will be presented to the Court the following morning.

28.     The parties have agreed that the party calling a witness will identify the trial exhibits and demonstratives to be used during direct examination of that witness by 7:00 p.m. two calendar days before the day the witness is called.  The other party shall identify any objections to exhibits or demonstratives by 7:00 p.m. the night before the witness is called.  The parties will meet and confer regarding any unresolved objections by 8:00 p.m. the night before the witness is called and will present any unresolved issues to the Court the morning of the proposed use of the disputed exhibit and/or demonstrative.

29.     Any document that on its face appears to have been authored by an employee, officer or agent of an adverse party or a predecessor of that party and produced by that party shall be presumed prima facie to be authentic, subject to the right of the party against whom it is offered to adduce evidence to the contrary.

**VII.    WITNESS NAMES AND DEPOSITION DESIGNATIONS**

30.     Bard's Witness List is hereby attached as Exhibit 8 to this Pre-Trial Order.

[**AngioDynamics's Position:**   AngioDynamics notes that Bard's witness list appears to identify Richard Rosenzweig, the Senior Vice President, General Counsel and Secretary of AngioDynamics.  AngioDynamics objects to this designation as seeking to create a severe burden on the company, and because Mr. Rosenzweig's testimony would be duplicative and cumulative of the testimony of other potential witnesses.  *See, e.g., Brit. Telecommunications PLC v. IAC/Interactivecorp,* No. CV 18-366-WCB, 2020 WL 1043974, at *8 (D. Del. Mar. 4, 2020); *United States ex rel. Galmines v. Novartis Pharms. Corp.,* No. CV 06-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015). Bard has not explained what unique knowledge Mr. Rosenzweig may have that it cannot discover through other, more convenient sources.  To threaten to cause a severe burden to AngioDynamics by requiring testimony of a high-level officer if AngioDynamics does not drop its challenge to standing is inappropriate.]  [**Bard's Position:**   AngioDynamics is now, for the first time, disputing that the recorded 2017 Patent Assignment in which C.R. Bard assigned all right, title and interest in the three Asserted Patents to BPV was sufficient to transfer legal title to BPV.  The Patent Assignment is signed by Richard Rosenzweig, who prior joining AngioDynamics, was Vice President, Law & Assistant Secretary at Bard.  As such, Mr. Rosenzweig is uniquely situated to testify regarding the facts and circumstances of the now-disputed Patent Assignment.  If AngioDynamics does not wish Mr. Rosenzweig to have to testify in this action, AngioDynamics should drop its challenge to the Patent Assignment that Mr. Rosenzweig executed.]

31.     AngioDynamics's Witness List is hereby attached as Exhibit 9 to this Pre-Trial Order.

32.     Each party will provide the other party with a list, in order of presentation, of witnesses it intends to call live on direct examination by 7 PM two calendar days before those

witnesses are intended to testify in Court. For example, if a witness will be called on Wednesday, the proffering party must notify the opposing party by 7 PM on Monday.

33.     Bard's preliminary list of designations and counter-designations of prior testimony is attached hereto as Exhibit 10.

34.     Attached as Exhibit 10A are AngioDynamics's objections and counter-designations to Bard's designations.

35.     AngioDynamics's preliminary list of designations, counter-designations, and rebuttal designations of prior testimony is attached hereto as Exhibit 11.

36.     Attached as Exhibit 11A are Bard's objections and counter-designations to Bard's designations.

37.     AngioDynnamics's preliminary list of designations of prior trial testimony is attached as Exhibit 12.  [**AngioDynamics's position:** The use of prior testimony is permitted where a party refuses to make its witnesses available for the counterparty's case-in-chief. *See, e.g.*, *Vandenbraak v. Alfieri*, No. CIV.A. 01-482KAJ, 2005 WL 1242158, at *5 (D. Del. May 25, 2005).  Bard has refused to make certain witnesses available during AngioDynamics's case-in-chief despite making them available during Bard's own case-in-chief.  Bard must make these witnesses available during AngioDynamics's case-in-chief or permit sworn trial and deposition testimony for such witnesses.  *Id.*; *see also Micron Tech., Inc. v. Rambus Inc*., No. CV 00-792 (SLR), 2007 WL 9771144, at *3 (D. Del. Aug. 29, 2007); *Buchwald v. Renco Grp., Inc*., No. 13-CV-7948 AJN, 2014 WL 4207113, at *1 (S.D.N.Y. Aug. 25, 2014) (ordering witnesses that are called during one party's case in chief be made available to testify during the other party's and if the witnesses are unavailable at the time of trial, limiting both parties to deposition testimony); *Iorio v. Allianz Life Ins. Co. of N. Am*., No. 05CV633 JLS (CAB), 2009 WL 3415689, at *1

(S.D. Cal. Oct. 21, 2009).  Bard states that "it cannot promise, at this point in time, that every single one of its witnesses will be available" to testify during AngioDynamics's case-in-chief.  This delaying tactic prejudices AngioDynamics.  Indeed, the reason Bard gives for its inability to commit is that Bard's expert witnesses are "practicing physicians" who apparently have time in their schedule to testify on Bard's behalf but not during AngioDynamics's case.  This position is untenable.  To the extent these witnesses are not available during AngioDynamics's case-in-chief, they are literally "unavailable" under the Federal Rules of Civil Procedure, Federal Rules of Evidence, and supporting caselaw as described above.  In that event, AngioDynamics may seek to admit their prior trial testimony as evidence in lieu of live testimony as supported by the Rules and caselaw.  Indeed, Bard's witness list proposes calling AngioDynamics's witnesses by designated testimony in Bard's case-in-chief.  AngioDynamics should be permitted to do the same].  [**Bard's position:** Bard intends to call the witnesses for which AngioDynamics designates trial testimony live.  Bard disputes that it is appropriate to designate trial testimony from witnesses who will be appearing live at trial.  Such testimony is hearsay, duplicative and a waste of time.  *E.g.*, *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147, 164-65 (3d Cir. 1995) ("we find Dr. Burgher's prior trial testimony to be hearsay in the context of the present trial"  and "[b]ecause there was no finding on the record as to unavailability, if the district court based admitting this testimony on Rule 804(b)(1), we hold that the district court abused its discretion in allowing this former testimony into evidence."); *Fenstermacher v. Philadelphia Nat. Bank*, 493 F.2d 333, 337-38 (3d Cir. 1974) ("The district court ruled these depositions inadmissible on the grounds that the deposed parties were present and had testified…The district judge's refusal to permit the introduction of the depositions into evidence was not prejudicial, however, since the depositions do not appear to add any information to that

given in oral testimony by the deponents and otherwise developed at the hearing."); *U.S. v.*
*International Business Machines Corp.*, 90 F.R.D. 377, 385 (S.D.N.Y. 1981) ("Depositions of
witnesses who testified at this trial will not be admitted into evidence.")  Bard did not "refuse[]"
to make certain witnesses available during AngioDynamics's case-in-chief despite making them
available during Bard's own case-in-chief."  Bard simply explained to AngioDynamics that the
parties should work together to address this issue at trial, as necessary, for each witness
depending on what testimony AngioDynamics seeks to designate.  Because of witness
availability issues, particularly for Bard's experts who are practicing physicians, Bard cannot
promise, at this point in time, that every single one of its witnesses will be available to testify
when AngioDynamics wishes to call them during its case-in-chief.]

38.     Bard's objections to AngioDynamics's designations of prior trial testimony is
attached as Exhibit 12A.

39.     The parties will continue to meet and confer in an effort to address and narrow
their respective designations of prior testimony, including objections, and will file updated lists
with the Court.

40.     The parties' proposals regarding final designations (and resolving objections
thereto) are as follows. Each party will provide the other with a list of final designations (from
the previously designated testimony) that it intends to introduce by 7:00 p.m. four nights before
the designations are intended to be used in court.  The other party will serve objections and
counter designations by 5:00 p.m. three nights before the testimony is to be presented.  By 7:00
p.m. that same night, the designating party will identify objections to the counter designations
and counter-counter designations.  The parties will meet and confer regarding designations
disputes at 8:00 p.m. that same night.  The parties will submit outstanding designation disputes to

the Court at 9:00 a.m. two days before the testimony is to be presented.  The party introducing

the designated testimony will provide a transcript and video by 9:00 p.m. the night before the

testimony is played.  New materials may not be added without good cause. However, materials

that were not designated may still be used at trial for the purposes of cross-examination,

impeachment, or rehabilitation, if otherwise properly usable for such purposes.

41.     The party who initially proposes the use of the testimony will provide the Court

with an accounting of the time for each party's designations based on the parties' proportional

share of lines of testimony for read-in testimony and by actual time for video testimony so that

the Court may accurately charge time to the designating parties.

### VIII.   DAMAGES

42.     Bard reserves its right to seek an accounting for pre-verdict supplemental

damages from September 2022 through judgment or issuance of an injunction.  AngioDynamics

has provided sales and financial information through August 2022.

43.     Bard reserves the right to seek treble damages under 35 U.S.C. § 284 and an

award of its attorney fees under 35 U.S.C. § 285 and its costs incurred with this action.

44.     AngioDynamics maintains its objection to pre-verdict supplemental damages and

reserves the right to object to any attempt by Bard to seek an accounting of damages from

September 2022 to the date of the verdict.

45.     AngioDynamics reserves its right to seek all available damages including

damages for unclean hands, punitive damages, an accounting, or separate hearing,

46.     AngioDynamics reserves its right to seek an award of its attorney fees and

expenses, including any actual or exemplary damages as appropriate, under 35 U.S.C. § 285 and

its costs incurred with this action.

### IX.     LENGTH OF TRIAL

47.     The time currently allocated for this trial is five days, with counsel for each party

allocated fifteen hours for opening statements, presentation of evidence, and closing statements.

(D.I. 526).

### X.     AMENDMENTS TO PLEADINGS

48.     No party intends to seek an amendment to the pleadings at this time.

### XI.     MOTIONS IN LIMINE

49.     The Court ruled on the Motions in Limine included with the original Pretrial

Order submitted in 2018.

50.     [**AngioDynamics's Position:** AngioDynamics has filed two additional Motions in

Limine with the Court separate from the pretrial order. *See* D.I. 510, 511.  These Motions in

Limine relate to an issue that could not have been decided in 2018, and which the parties

currently dispute:  the effect of the Federal Circuit's 2020 decision in *C.R. Bard Inc. v.*

*AngioDynamics, Inc.*, 979 F.3d 1372 (Fed. Cir. 2020) on the issues still to be decided in the

remand trial.] [**Bard's position:**  Bard disagrees that AngioDynamics was entitled to file two

unsolicited Motions in Limine and Bard disputes that AngioDynamics may properly file

additional unsolicited Motions in Limine.  AngioDynamics' apparent position that it can file

additional Motions in Limine without seeking leave of the Court is not consistent with the

Scheduling Order, which limits the parties to five Motions in Limine each that must be filed as

part of the Pretrial Order.  Bard also disagrees with the proposition that facts allegedly

"acknowledged" by the Federal Circuit are undisputed.]

51.     In addition to the Motions in Limine, AngioDynamics has filed a Motion to Strike

certain portions of the report of Dr. Cox.  D.I. 522.  [**AngioDynamics's Position:**  This Motion

to Strike relates to an issue that could not have been decided in 2018:  the addition of a new

accused product into the case in a March 11, 2022 supplement to Dr. Cox's report.] [**Bard's Position:**  Bard agrees that this issue could not have been decided in 2018 because the product at issue (SmartPort+) had not launched at that time.  Bard disagrees that the SmartPort+ is a "new accused product" for the reasons explained in Bard's opposition (D.I. 523).]

52.     Bard filed a motion to strike the supplemental expert report of AngioDynamics' expert Dr. Vogelzang, which AngioDynamics served on April 8, 2022 and that identifies nine new prior art references.  D.I. 514.

53.     [**AngioDynamics's Position:**  Given the years that have passed since previous *Daubert* motions, subsequent Federal Circuit decisions have clear holdings that have altered or clarified the law regarding the admissibility of certain types of expert testimony, including specifically on issues such as apportionment of damages.  *See, e.g., Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018); *360Heros, Inc. v. Gopro, Inc.*, No. CV 17-1302-MFK-CJB, 2022 WL 1746854, at *9 (D. Del. May 31, 2022). *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. CV 17-1390-LPS-CJB, 2020 WL 3060458, at *6 (D. Del. June 9, 2020). This caselaw, which was not issued or developed during prior *Daubert* briefing, has continued to develop in the several years since the parties last visited the issue.  In the meantime, the parties' experts including Bard's damages expert, Dr. Cox, have continued to provide supplementations to their reports and are slated to be deposed in connection with those new opinions.  Now is the time to ensure that the parties' experts' testimony is in line with the evolution of Federal Circuit caselaw.  AngioDynamics proposes that, to the extent either party intends to file a Motion under *Daubert v. Merrell Dow Pharms*., 509 U.S. 579 (U.S. 1993), such Motion be filed no later than September 30, 2022, any response to such Motion be filed no later than October 14, 2022, and any reply to the response be

filed no later than October 21, 2022.  AngioDynamics has attempted to propose a reasonable

schedule to allow the parties to brief any new *Daubert* issues under a reasonable timeline.

Bard's refusal to negotiate on an appropriate briefing schedule has delayed the issue, requiring it

to be raised here.]  [**Bard's Position:**  The parties already have filed and the Court already has

ruled on *Daubert* motions.  There have been no case developments that warrant a new round of

*Daubert* motions.  Based on the cases AngioDynamics identifies, it appears that AngioDynamics

plans to file another *Daubert* motion to preclude testimony from Bard's damages expert Dr. Cox.

AngioDynamics already filed a *Daubert* motion seeking to exclude Dr. Cox's testimony, and the

Court denied that motion.  D.I. 356.  Up until five minutes before this Pretrial Order was due,

AngioDynamics relied on two 2018 Federal Circuit cases and two District of Delaware cases,

one from 2020 and one from 2022, that purportedly "have altered or clarified the law regarding

the admissibility of certain types of expert testimony."  AngioDynamics relied on one of those

cases, *Exmark Mfg. Co. v. Briggs & Stratton Prods. Grp. LLC*, 879 F.3d 1332, 1350 (Fed. Cir.

2018), in its failed 2018 *Daubert* motion seeking to exclude Dr. Cox's testimony.  D.I. 319 at 2.

Five minutes before the Pretrial Order was due, AngioDynamics deleted reference to *Exmark*

after Bard pointed out that *Exmark* was decided in January 2018, before AngioDynamics filed its

opening *Daubert* brief in March 2018.  The three cases on which AngioDynamics now relies are

not new, and they have not altered the law.  The Federal Circuit decision that AngioDynamics

identifies issued before the 2019 trial in this case, and if AngioDynamics believed that that

decision required a different result, then AngioDynamics should have moved for reconsideration.

Nor have the two District of Delaware cases on which AngioDynamics relies "altered or

clarified" the law regarding admissibility of expert testimony.  All follow the Federal Circuit's

decision in *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51 (Fed. Cir. 2012) on which

AngioDynamics relied on its failed *Daubert* motion.  And AngioDynamics provides no justification for waiting until September 2022 to raise this issue.  Throughout the first half of 2022, AngioDynamics raised numerous issues, including filing additional motions-*in-limine*, a new expert report and filing a motion to strike.  Yet, AngioDynamics waited until less than two months before trial to request the opportunity to file a new *Daubert* motion based on a Federal Circuit case from 2018.  Bard does not agree to AngioDynamics' proposed briefing schedule. To the extent, AngioDynamics wished to file additional *Daubert* motions, it should have proposed a schedule that would have permitted those motions to be heard at the pre-trial conference.  It is highly prejudicial to force Bard to brief *Daubert* issues less than a month before trial.  AngioDynamics also contends that "parties' experts," including Bard's expert Dr. Cox, "have continued to provide supplementations to their reports and are slated to be deposed in connection with those new opinions."  Bard disputes that Dr. Cox has issued any "new opinions."  Dr. Cox has merely supplemented his damages calculations to include AngioDynamics's updated sales numbers.  That does not provide a basis for a new *Daubert* motion.  Bard also disagrees with AngioDynamics's assertion that it "refus[ed] to negotiate on an appropriate briefing schedule" and that that "has delayed the issue,"  AngioDynamics notified Bard for the first time on September 2, 2022 that it intended to file additional *Daubert* briefing and identified the cases it cites above for the first time on September 15th, the day before this pre-trial order was filed.]

## XII.   ADDITIONAL MATTERS

### Jury Notes and Notebooks

54.    The parties agree that the jurors be permitted to maintain Court-provided notebooks during the presentations of the parties and that jurors be permitted to bring these notebooks into the deliberation room. The parties further propose that the jurors be instructed not

to share the notebooks with each other (though they can discuss the contents of their notes during deliberation only) and that the notebooks be collected and destroyed after the verdict without review. The parties further agree to meet-and-confer regarding specific materials the jurors will be permitted to have.

55.     Bard proposes that the notebooks contain the patents-in-suit and a list of the Court's claim constructions.

56.     AngioDynamics believes that the jury notes and notebooks and their contents should be addressed among the parties during the anticipated meet and confer process, but that the jurors be given, at most, a list of the Asserted Claims, the Court's claim construction decision, and the Federal Circuit's printed matter decision (*C. R. Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1381-2 (Fed. Cir. 2020)).

### Handling of Confidential Information at Trial

57.     The parties anticipate that the majority of the trial will be open to the public and not sealed unless a party specifically requests that a particularly sensitive portion be sealed. If a party makes such a request, subject to the Court's approval, and for good cause shown, the courtroom shall be cleared of those individuals not qualified under the Protective Order entered in this case, except that each party may designate one corporate representative who may remain in the courtroom throughout the entirety of trial. Each party must notify the opposing party of the identity of this corporate representative before trial.

### Sequestration of Witnesses

58.     The parties request pursuant to Fed. R. Evid. 615 that, except for one corporate representative, the Court prevent fact witnesses from hearing the testimony of other witnesses. The parties further request that expert witnesses not be excluded for either fact or expert testimony.

**Set-up of Electronic and Computer Devices**

59.     The parties request that the Court grant access to the Courtroom on the last weekday before trial begins for the purposes of setting up electronic and computer devices.

60.     To the extent that both parties are utilizing common equipment in the Courtroom, the parties will share the cost of that equipment.

**Federal Judicial Center Introduction to the Patent System video**

61.     The parties propose that the video be played as part of the Court's preliminary jury instructions.

## XIII.   CERTIFICATION OF GOOD FAITH EFFORTS TO EXPLORE RESOLUTION OF CONTROVERSY BY SETTLEMENT

A.     The parties certify that they are continuing to engage in a good faith effort to explore the resolution of the controversy by settlement.

## XIV.   CONCLUSION

B.     **IT IS HEREBY ORDERED** that this order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

2.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Plaintiffs and Counterclaim*
*Defendants C.R. Bard, Inc. and Bard*
*Peripheral Vascular, Inc.*


September 16, 2022

POTTER ANDERSON & CORROON LLP

*/s/ David E. Moore*

_____
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Brandon R. Harper (#6418)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
bharper@potteranderson.com

*Attorneys for Defendant, Counterclaim-*
*Plaintiff and Crossclaim / Third Party*
*Complaint Plaintiff AngioDynamics, Inc.*



SO ORDERED this _____ day of _____, 2022.


_____
UNITED STATES DISTRICT JUDGE